

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

———————————————

No. 06-10-00007-CV

———————————————

TONY MILLER, INDIVIDUALLY AND D/B/A
TONY MILLER RENOVATIONS & CONSTRUCTION, Appellant

V.

GAIL MCCARTY, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 08C0269-202

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Spencer and Gail McCarty experienced problems with their Bowie County home which appeared to be caused by flaws in its foundation. In November or December 2007, Spencer made contact with a family friend, Tony Miller, doing business as Tony Miller Renovations and Construction, to repair the foundation. Spencer died during December 2007 and Gail contracted with Miller to perform the work, this being the construction of pilings under the foundation to give added support to the foundation's southwest corner. Upon commencement of the anticipated repairs, Miller discovered concrete pilings beneath the foundation which indicated that there had apparently been two previous attempts to ameliorate the foundation problem. Although the existence of these unexpected pilings created more difficulty than Miller had anticipated when bidding the work, he attempted to work around them, but was unable to do so. Various disputes arose regarding the deposit McCarty was to pay, the existence of an agreement that more work was needed to lend additional support to the entire south end of the house, and the existence and impact of an alleged plumbing leak which Miller maintained was the precipitating cause of the foundation problems. As a result of the cumulative disputes, work on the job ceased with Miller and McCarty blaming each other, McCarty claiming that Miller voluntarily quit and Miller maintaining that he had been ordered by McCarty to leave the job site.

McCarty filed suit against Miller individually and as Tony Miller Renovations & Construction, alleging negligence, breach of contract, and violations of the Texas Deceptive Trade

Practices—Consumer Protection Act (DTPA).  TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (Vernon 2002 & Supp. 2010).  Miller alleged contributory negligence, counterclaimed for breach of contract, and pled excuse for his failure to perform.  After a jury trial, the jury found:  (1) that both parties were negligent; (2) that McCarty had been damaged in the sum of $4,700.00 due to Miller's nonperformance of the contract; (3) that Miller performed compensable work of the value of $2,937.50; and (4) that both parties had failed to comply with the contract; (5) but that Miller's failure to comply with the contract was excused.  The issue of attorney's fees was submitted to the trial court.  McCarty submitted attorney's fees of $18,135.00 and Miller submitted attorney's fees of $1,800.00.

After the filing of warring motions for judgment *non obstante veredicto* and motions to enter judgment, the trial court entered a judgment which (1) disregarded the jury's finding that Miller was excused from complying with the contract, and (2) after weighing offsets, payments, attorneys' fees, and costs of court, awarded McCarty judgment for $18,204.90.

On appeal, Miller argues that the trial court erred in disregarding the jury's finding that Miller's breach of contract was excused on the stated basis that the finding was inconsistent with the greater weight of the evidence.  Miller further contends that because the jury found that he was excused from performance of the contract, the trial court erred in awarding McCarty attorney's fees and recovery for damages.

3

In her cross-appeal, McCarty contends that: (1) there is factually insufficient evidence that Miller and McCarty were twenty percent and eighty percent negligent, respectively; (2) there is factually insufficient evidence that McCarty failed to comply with the contract; (3) there is factually insufficient evidence that Miller's failure to comply with the contract was excused; and (4) the trial court erred because it did not award attorney's fees consistent with the uncontroverted evidence.

As to Miller's appeal, we reverse the trial court's order disregarding the jury's finding because there is legally and factually sufficient evidence that Miller's failure to comply with the contract was excused. We also reverse the award against Miller for damages incurred by McCarty and the attorney's fee award given to her.

As to McCarty's cross-appeal, we reject McCarty's argument that: (1) there is legally and factually insufficient evidence that McCarty was negligent; (2) there is legally and factually insufficient evidence that McCarty failed to comply with the contract; and (3) there is legally and factually insufficient evidence that Miller's failure to comply was excused.

### Standard of Review

The issues on appeal are the legal and factual sufficiency of the jury findings and the trial court's decision to disregard one of those findings. A trial court may disregard a jury's finding only if there is no evidence to support the finding. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.

4

1966).  In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Hooper v. Smallwood*, 270 S.W.3d 234 (Tex. App.—Texarkana 2008, pet. denied).

In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  Anything more than a scintilla of evidence is legally sufficient to support the jury finding. *Cazarez*, 937 S.W.2d at 450.  When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust.  *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d 839, 841–42 (Tex. App.—Dallas 2009, no pet.); *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied).

***Legally and Factually Sufficient Evidence Regarding Miller's Excuse to Comply with Contract***

In its answer to Question 7, the jury found that Miller's failure to comply with the contract was excused.  Finding that the answer was "inconsistent with the greater weight of evidence," the trial court granted McCarty's motion to disregard the jury's answer to Question 7.[1]  Miller argues

---

[1]By citing the "greater weight of evidence" as its basis for disregarding the jury's answer, the trial court failed to use the proper "no-evidence" standard.  However, we will affirm the trial court's decision if there is less than a scintilla of evidence to support any of Miller's theories of excuse.  *See Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam); *see also In re Acevedo*, 956 S.W.2d 770, 775 (Tex. App.—San Antonio 1997, orig.

that the trial court erred because there is sufficient evidence that Miller's failure to comply was excused.[2] Contraveningly, McCarty contends that there is legally and factually insufficient evidence to support the jury's finding in the first place.

At trial, Miller argued that his failure to comply with the contract was excused because: (1) he and McCarty agreed that a new contract would take the place of the original, (2) McCarty failed to comply with a material obligation of the contract, and/or (3) McCarty repudiated the contract. The charge of the court listed each of these potential excuses for performance in its instructions; therefore, the jury was permitted under those instructions to find Miller's excuse from performance on any one or more possibly inconsistent grounds without specifying the specific reason.

A contract that is modified or amended by the mutual consent of the parties constitutes a new agreement that takes the place of the original. *S & D Group, Inc. v. Talamas*, 710 S.W.2d 680 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.); *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873, 877 n.4 (Tex. App.—San Antonio 1977, writ ref'd n.r.e.).

Here, the contract called for Miller to repair McCarty's foundation in three phases. It is undisputed that phase one included the installation of six concrete piers beneath the southwest corner of McCarty's residence for a total cost of $4,000.00. The contract required McCarty to

proceeding); *Hawthorne v. Guenther*, 917 S.W.2d 924, 931 (Tex. App.—Beaumont 1996, writ denied); *Luxenberg v. Marshall*, 835 S.W.2d 136, 141–42 (Tex. App.—Dallas 1992, no writ).

[2]Miller also argued that the trial court erred because it failed to apply the proper standard of "no evidence" when ruling on the motion and it failed to address all three of Miller's proffered reasons for excuse.

pay Miller $2,000.00 at the beginning of phase one and another $2,000.00 upon the completion of phase one. Shortly after McCarty paid the initial $2,000.00 and Miller began work, Miller discovered concrete blocks near the foundation that were apparently part of a previous attempt to repair the foundation.

Miller testified that after he attempted to work around the previous foundation repair work, McCarty inquired of him what would be needed to raise the entire south end of the residence (as opposed to raising only the southwest corner as had been previously contemplated by the parties). Miller advised that this change would require six additional piers added to phase one of the contract, an action that would elevate the total cost of phase one by $1,875.00. Miller also testified that in order to do the expanded work, he would require one-half of the additional cost (or an additional $937.50) before he commenced work. Miller testified that McCarty paid $500.00 of the $937.50, but failed to pay the remaining $437.50.

McCarty admitted having paid Miller the additional $500.00 which Miller mentioned, but attributes that additional payment to a very different fact circumstance. Instead, McCarty testified that Miller approached her and said he was broke and needed more money and that plea is the sole reason she paid him the additional $500.00. McCarty specifically denied requesting that Miller add more piers and, by implication, denies modifying or amending the original contract in any way.

7

The conflicting evidence raises a fact issue as to whether a new agreement was made. It is the jury's province to resolve conflicts in the evidence. *Wilson*, 168 S.W.3d at 819–20. The jury remains the sole judge of witnesses' credibility and the weight to be given their testimony; it is free to accept or reject all or part of a witness's testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Having considered all the evidence, we find legally and factually sufficient evidence from which the jury could have determined that the parties agreed that a new contract would take the place of the original.[3] *See Bradford*, 48 S.W.3d at 754. The jury's finding is supported by more than a scintilla of evidence and is not so against the great weight and preponderance of the evidence that it is clearly unjust. Therefore, the trial court erred in disregarding the jury's answer to Question 7, and we reverse that portion of the judgment.

***Legally and Factually Sufficient Evidence to Support the Jury's Findings***

McCarty's 80% Negligence

In her pleadings, McCarty made allegations of violations of the DTPA. At trial, McCarty argued that Miller's negligence was responsible for the damages to her home. While Miller admitted to damaging a few patio tiles and some of the brick on the home, he contended that the rest of the damages were the result of McCarty's failure to timely repair the foundation problem or the plumbing leak that allegedly caused it.

---

[3]The jury did not specify the grounds upon which they found Miller's breach to be excused. Having found sufficient evidence supporting one of Miller's proffered grounds for excuse, we need not address the others.

8

The issues were presented to the jury and, in its answers to Questions 1 and 2, the jury found that the negligence of both McCarty and Miller proximately caused the damages. The jury found McCarty to be eighty percent negligent and Miller to be twenty percent negligent. In her cross-appeal, McCarty argues that there is legally and factually insufficient evidence to support the finding that she was eighty percent negligent. We disagree.

McCarty knew of the home's foundation problems as early as November 2005, but she did not attempt to have them repaired until Miller began work in December 2007.[4] Several witnesses testified to the condition of the home prior to Miller beginning work. Mike Moon, a plumber, testified that he noticed a "steep" downward slope in the floor of the home. Joe Russ, Jr., a construction manager for an engineering company that does failure analysis, foundation repair, and other construction, testified that he noticed a slope in the floor years prior to McCarty buying the house. Just prior to Miller's work, he was in the home and saw damages consistent with foundation problems: the floor had a downward slope to it, the fireplace listed to one side, doors would not open or latch, and there were deep cracks in the walls and "cracks, rips, [and] tears in the sheetrock" and wall paper.

McCarty argued that the pre-existing problems with the walls, doors, and molding got worse after Miller's work. McCarty's expert architect, Mark Glenn, testified to the home's condition several weeks after Miller stopped working on the McCarty residence. Outside, he saw

---

[4]In late 2005 and early 2006, McCarty contacted a repair company, received an estimate, and agreed to a contract to have her foundation repaired, but McCarty later canceled that contract.

several large, water-filled holes[5] that were dug under the home, broken pipes, "jerry-rigged electrical and gas connections," damage to a small portion of the home's brick exterior, and some damage to "small patio slabs." Inside, he observed "[m]edium to large sized cracks" in the drywall, doors that were stuck, and separated crown molding. Glenn testified that based on the information he was given at the time of his inspection, Miller's work "definitely contributed to the more extensive damage."

Determining the degree, if any, that the parties' respective negligence proximately caused McCarty's damages is the province of the jury. *See Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi 2003, no pet.); *see Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The jury determined that the negligence of both Miller and McCarty "proximately cause[d] the occurrence in question." It is the jury's role to weigh witnesses' credibility and determine whether McCarty's conduct contributed to her damages, and if so, to what degree. *Golden Eagle Archery*, 116 S.W.3d at 761. Here, the jury could have reasonably concluded that McCarty's two-year delay in repairing the foundation was the predominant proximate cause of the wall cracks, jammed doors, sloped floor, and other damages, as well as any aggravation thereof. We find the evidence supporting the jury's finding to be more than a scintilla and not so weak or the finding so against the great weight

---

[5]There was conflicting testimony regarding whether Miller initially covered the holes and whether McCarty or anyone else subsequently removed the tarpaulin covers, causing the holes to fill with water. Glenn testified that failing to cover the holes and allowing them to stay filled with water would aggravate the existing foundation problems.

and preponderance of the evidence that it was clearly wrong and unjust. Therefore, we overrule this point of error.

Failure of McCarty to Comply with Contract

In its answer to Question 5, the jury found that McCarty failed to comply with the contract. McCarty contends that the evidence supporting the finding is legally and factually insufficient. We disagree.

Hereinabove, we found sufficient evidence that the parties agreed that a new contract would take the place of the original contract. Under the terms of the modified contract, six additional piers were required at an additional cost of $1,875.00. Miller required McCarty to pay one-half of the additional cost ($937.50) at the outset. Miller testified that McCarty failed to make the required up-front payment. Even though she denied modifying the contract, McCarty paid Miller an additional $500.00, but did not pay him the remaining $437.50.

This issue was contested and a fact issue was presented to the jury, which it resolved against McCarty and determined that she failed to comply with the contract. We conclude the evidence supporting the finding amounts to more than a scintilla and was not so weak or the finding so against the great weight and preponderance of the evidence that it was clearly wrong and unjust.

*Issue of Attorney's Fees*

11

The parties stipulated that attorney's fees would be determined by the trial court through submitted affidavits. McCarty's affidavit reflected attorney's fees of $18,135.00, but the trial court awarded McCarty only $14,000.00 in attorney's fees. McCarty contends that the trial court erred by failing to award the $18,135.00 in attorney's fees because the evidence was undisputed and must be taken as true as a matter of law.

The jury having determined that Miller was excused from performing the contract, Miller had no obligation to perform. Had McCarty recovered in her claim of breach of contract, she would have been entitled to attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2008). Because Miller was found by the jury to have been excused from performance, he cannot now be held liable for attorney's fees in a suit to enforce a contract, the performance of which he has been excused.

Accordingly, a discussion of the parameters which guide a trial court in the award of attorney's fees is unnecessary and would be superfluous.

We overrule this point of error.

No point of error was raised as to the correctness of Miller's quantum meruit claim and attorney's fee award. Because there is sufficient evidence that Miller's breach was excused, McCarty did not prevail on her contract claim, and therefore, is not entitled to either damages or attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001–.006 (Vernon 2008 & Supp. 2010).

We reverse the awards as to McCarty, as to both damages and attorney's fees, and render judgment that McCarty take nothing.    We further render judgment in favor of Miller in accordance with the jury's verdict.


                                        Bailey C. Moseley
                                        Justice

Date Submitted:        September 8, 2010
Date Decided:          September 21, 2010

13