

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00271-CV

VILLA DE LEON CONDOMINIUMS, LLC, PATTEN SALES AND MARKETING, LLC, AND BILL BRIDGES, JR.

APPELLANTS

V.

MICHAEL STEWART AND CARRIE STEWART

APPELLEES

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-269987-14

----------

## MEMORANDUM OPINION[1]

----------

This is an interlocutory appeal from an order denying a motion to compel arbitration. In five issues, appellants Villa De Leon Condominiums, LLC, Patten Sales and Marketing, LLC, and Bill Bridges, Jr. contend that the trial court erred

---

[1]*See* Tex. R. App. P. 47.4.

by denying their motion to compel arbitration and for a stay of all other trial court proceedings pending arbitration. We reverse and remand.

## Background

Villa De Leon and appellees Michael and Carrie Stewart initially negotiated the sale of a condominium unit, Unit 530, in Villa De Leon's complex. The Stewarts later decided to buy Unit 130 instead. After closing the purchase of Unit 130, the Stewarts sued appellants for various types of fraud, negligence, and violations of the DTPA. Appellants filed a motion to compel arbitration in accordance with the purported sales contract.

Part of the evidence includes an eleven-page contract[2] with multiple attached exhibits for the sale of Unit 530 (the Contract); the Contract contains the following dispute resolution clause:

> If a dispute arises between Seller and Buyer or their successors and assigns (the "Parties") as to whether a party has defaulted or as to any other matter relating in any manner to the Property or the Contract or the obligations arising out of this Contract and the closing documents, including claims of misrepresentation, warranty claims, fraud, fraudulent inducement, deceptive trade practice (a "**Dispute**"), then the Dispute must proceed to a binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

Carrie signed the final, signature page of the Contract with the date August 22, 2013, and she also initialed the bottom of every page of the Contract, including

---

[2]The first page is an information sheet identifying the unit to be sold, the purchase price and earnest money, and address and phone numbers for the Stewarts.

2

the page with the dispute resolution clause.  Michael did not sign the signature page of the Contract, but he initialed every page but the third page; the page with the dispute resolution clause is one of the pages he initialed.[3]  Michael and Carrie had also signed a third party financing addendum attached to the Contract as an exhibit, dated August 19, 2013.

Also on August 22, 2013, both Michael and Carrie signed the following letter agreement dated August 21, 2013 and signed by Bridges, on behalf of Villa De Leon:

> Dear Michael & Carrie,
>
> Please accept this letter of intent as part of our purchase and sale agreement dated August 21, 2013.
>
> Upon financial loan approval by Om[]ni-American Bank of Ft Worth and the closing of this transaction on or before October 1, 2013 by Fidelity National Title Company of Southlake, Texas, the Seller agrees to provide a Viking Pro Series 48 inch Refrigerator/Freezer with Water Dispenser (model VVCSB5481DSS) and its installation within 5 days of the purchase of Villa De Leon Condominium Unit 530, at 501 Samuel Ave, Ft Worth, Texas 76102.
>
> Please sign and date acceptance of this agreement.

The letter agreement has a handwritten slash across "530" and the following note:  "BGB – Unit 130 – 8-25-2013," initialed underneath by both Michael and Carrie.

---

[3]The Stewarts initially contended that neither Michael nor Carrie had signed or fully initialed the Contract; however, at the hearing on the motion to compel, all parties argued that only Michael had not signed the Contract.

Despite what he did initial and sign, Michael claims he did not sign the signature page of the contract because he and Carrie decided not to purchase Unit 530. Bridges prepared an "Addendum to Contract for Purchase and Sale" (First Addendum), which stated as follows:

> This is an Addendum ("Addendum") to the Contract for Purchase and Sale ("Cont[r]act") by and between (VILLA DE LEON CONDOMINIUM, LLC), a Delaware limited liability company, as Seller, and the above referenced Purchaser.
>
> Seller and Purchaser, each intending to be legally bound, do hereby covenant and agree as follows:
>
> 1. The terms used in this Addendum shall have the same meaning given to such terms in the Contract.
>
> 2. The Contract is hereby amended to add the following:
>
> • Seller will, at Seller's sole expense, pay 15 months of Home Owners Association's unit maintenance fees at the current rate of $1698.84 per month for a total payment of []$25,482.60. This payment will be reflected as a credit to the Purchaser on the HUD at the time of closing. The Purchaser is responsible for making the payments to the HOA. Any changes to future monthly HOA fees will be borne by/inure to the benefit of the Purchaser. The Seller is not responsible for any payment other than the amount noted above.
>
> • Seller at [S]eller's sole expense shall provide paint and carpet restoration as represented in Unit 430.
>
> • Seller will accept a closing date for this agreement on or before October 1, 2013, as reasonable time needed for Om[]ni-American Bank to process their third party finance program.
>
> • Seller will provide a construction allowance of $5100.00 for installation of pantry and utility cabinets[.]
>
> • Both Seller, Buyer and Broker agree that the Buyer will be responsible for paying brokerage fee compensation per the

original purchase contract and Seller will pay no brokerage fee at closing for this transaction.

A handwritten note on the First Addendum—"This also cancels the purchase agreement for #530"—was initialed by all parties. The First Addendum also stated that "[t]his Addendum is an integral part of the Contract and shall form a part thereof," that "[i]n the event of a conflict between the terms and provisions of this Addendum and the terms and conditions of the Contract, the terms and provisions of this Addendum shall prevail," and that "[e]xcept as provided above, the Contract is not altered or amended hereby and remains in full force and effect according to the terms hereof." Both of the Stewarts signed the First Addendum on August 25, 2013. Bridges also signed the addendum.

On October 3, 2013, both of the Stewarts signed a second "Addendum (2) to Contract for Purchase and Sale" (Second Addendum). The Second Addendum includes the same introductory language as the First Addendum, and it also states the following:

The Contract is hereby amended to add the following:

- Seller agrees to credit Buyer $5,000 at closing in lieu of repairing damage to wood flooring. Buyer agrees that Seller by offering a credit has fulfilled their obligation to repair damaged section of the wood flooring and that Seller has no further obligation to Buyer.

- Credit amount is based upon a quote issued from Trinity Floor Company of Dallas.

After a nonevidentiary hearing at which the trial court heard argument on appellants' motion, the trial judge stated the following on the record:

5

I do not find a case that enforces an arbitration agreement in a contract where only one of the parties or one of the signatories signed and the other didn't. . . . I believe that the right to trial by jury is a fundamental right, and to the extent that no one could produce a copy of a contract signed by Michael Stewart that incorporates that arbitration agreement, I'm going to deny the Motion to Abate and Compel Arbitration, and we're going to go forward in this case here in this Court.

Thus, the trial court denied the motion to compel arbitration and stay the trial court proceedings.

## Standard of Review and Applicable Law

The party seeking arbitration has the initial burden to present evidence that a valid arbitration agreement exists. *Chopra & Assocs., PA v. U.S. Imaging, Inc.*, No. 14-13-01099-CV, 2014 WL 7204868, at *2–3 (Tex. App.—Houston [14th Dist.] Dec. 18, 2014, no pet.) (mem. op.). A trial court's determination regarding the validity of an agreement to arbitrate is a question of law which we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding). When deciding whether parties agreed to arbitrate, courts should apply ordinary state law principles regarding the formation of contracts. *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 882–83 (Tex. App.—Fort Worth 2012, no pet.). The absence of a signature on a contract does not necessarily negate its validity. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2003, pet. denied).

6

## Existence of Agreement to Arbitrate

The Stewarts contended in the trial court (1) that Michael never agreed to purchase Unit 530 and thus never agreed to the dispute resolution paragraph in that Contract, (2) that the handwritten language in the First Addendum stating, "This also cancels the purchase agreement for #530," cancelled the Contract in its entirety, and (3) that the contract to sell Unit 130 consisted solely of the First Addendum and a cover page identifying the unit and information about the Stewarts, none of which contained a dispute resolution clause.  Thus, the primary issue in determining whether a valid agreement to arbitrate exists is whether the First Addendum was intended to be merely an addition to the Contract or an entirely new agreement containing none of the provisions of the Contract.

### Contract Construction

In analyzing words in a contract, we give them their ordinary, generally accepted meanings unless the contract itself shows that the terms have been used in a technical or different sense.  *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458–59 (Tex. App.—Fort Worth 2009, pet. denied).  Courts should be particularly wary of isolating individual words, phrases, or clauses and reading them out of context.  *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).  Instead, "[w]e construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'"  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165

7

S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).  In addition, we examine all writings relating to the same transaction.  *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 857 (Tex. App.— Fort Worth 2009, pet. denied) (holding that to ascertain parties' intent, all writings relating to the same transaction are examined, harmonized, and given effect).

**Analysis**

Even if Michael had not initially agreed to the purchase of Unit 530 and, by extension, to all of the terms of the Contract including the dispute resolution clause,[4] the First Addendum—construed in its entirety—clearly is intended as an amendment to the Contract and shows all of the parties' intent to be bound by all of the terms of the Contract except as specifically amended in the First Addendum.  The part of the First Addendum stating that it was amending the Contract was not crossed out or changed by the parties nor was the part stating that the First Addendum was an "integral part" of the Contract.  Additionally, the general information sheet that the Stewarts concede is part of the sale agreement specifically refers to, and references obligations in, parts of the Contract.  It states, "In addition to the Purchase Price shown above, Buyer also agrees to pay all closing costs and other sums required to be paid by Buyer

---

[4]Although we need not reach that particular aspect of the issue, we note that the Stewarts' position that the contract for Unit 530 was cancelled is inconsistent:  if Michael had never agreed to the Contract, there would be nothing to "cancel."

under this Contract (see Section 7.E)." Additionally, it provides that the closing date for the sale is "subject to adjustment pursuant to Section 7.A." This information sheet is initialed by the Stewarts and Villa De Leon's sales representative and is dated "Revised 8-25-2013."

Additionally, the Second Addendum appears to be amending Villa De Leon's obligation in section 6.A. of the Contract: "If a condition is discovered which affects the structural integrity or functional components (as opposed to cosmetic conditions) of the Unit or the Limited Common Elements, if any, Buyer shall notify Seller within the Inspection Period and Seller shall have such time as reasonably necessary to remedy such condition." This provision is not included in the First Addendum, information page, or any other writing. Thus, if the Contract had consisted solely of the information sheet and First Addendum, there would have been no need for the Second Addendum because Villa De Leon would have had no obligation to repair anything before closing.

A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions. *Miller v. McCarty*, 323 S.W.3d 612, 615 (Tex. App.—Texarkana 2010, no pet.); *NP Anderson Cotton Exchg., L.P. v. Potter*, 230 S.W.3d 457, 465 (Tex. App.—Fort Worth 2007, no pet.). We conclude and hold—construing the First Addendum and related writings as a whole, as we must—that the Stewarts agreed to and are bound by the arbitration agreement in the dispute resolution clause of the Contract as

9

evidenced by their agreement to the First Addendum and that the trial court erred by concluding otherwise. We sustain appellants' first issue.

## Appropriateness of Stay

In their fifth issue, appellants contend that, as a result of the trial court's denying their motion to compel, it further erred by denying a stay of the trial court proceedings pending arbitration. If a claim falls within the scope of a valid arbitration agreement, the trial court has no discretion but to compel arbitration and stay the trial court proceedings pending arbitration. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). Accordingly, we sustain appellants' fifth issue.

## Conclusion

Having sustained appellants' dispositive issues, we reverse the trial court's order denying appellants' motion to compel arbitration and stay the trial court proceedings. We remand this cause to the trial court to render an order in accordance with this opinion.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

GABRIEL, J., filed a concurring opinion.

DELIVERED: February 19, 2015

10