# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00218-CV

---

**Carlos M. Reyes and Molly J. Reyes, Trustees; and The Carlos M. and Molly J. Reyes Trust, Appellants**

**v.**

**Simple Capital, LLC, Appellee**

---

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 22-0-026, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This appeal arises from a suit to enforce a contract for the sale of an apartment complex. Carlos M. Reyes and Molly J. Reyes, as trustees of the Carlos M. and Molly J. Reyes Trust and the Trust itself (collectively, "Trust"), appeal from the district court's grant of summary judgment in favor of Simple Capital, LLC. We affirm.

### BACKGROUND

On October 21, 2021, Simple Capital entered a contract with the Trust to purchase an apartment complex in Luling for $1,050,000. The Contract contained a provision that allowed Simple Capital to terminate the contract for any reason within sixty days of the agreement's effective date.[1] The closing date for the sale was January 21, 2022.

---

[1] Simple Capital paid an additional $1,000 in exchange for this option.

Simple Capital used the sixty-day feasibility period to investigate the complex and its management operations. On December 7, 2021, Simple Capital emailed Carlos Reyes that its investigation revealed significant issues with the property, including a recent murder, a "tremendous amount of drug and other criminal activity" on the property, exterior stairs and walkways "near collapse" from rotting support beams, "countless plumbing and electrical problems," and the property manager's inability to provide accurate records for more than five or six tenants.[2]

In the final section of the email, Simple Capital proposed reducing the purchase price to $650,000 in return for Simple Capital foregoing the remainder of the feasibility period and agreeing to assume liability for any "potential or pending lawsuits" against the Trust related to the Trust's ownership of the property. Attached to the email was a proposed amendment on the Texas Association of Relators' form entitled "Amendment to Contract" reflecting the proposed amendments.

Carlos Reyes testified by deposition that he understood the email to be a proposed amendment to the Contract and that he rejected it. On December 20, 2021—the last day of the feasibility period—Simple Capital emailed another amendment form to the Trust, proposing to reduce the price to $800,000 in exchange for the same terms. The Trust also rejected that proposal.

By letter dated December 29, 2021, Simple Capital informed the Trust that it intended to close on the sale according to the terms of the original Contract. Simple Capital

---

[2] Simple Capital attached the email and all materials we discuss in the remainder of this section to its motion for summary judgment or to its response to appellants' motion for summary judgment.

arrived at the title company's office on the day of the closing and tendered a cashier's check for the full sales price. No representative of the Trust appeared, and the closing did not proceed.

Simple Capital sued the Trust for breach of contract and sought specific performance and attorney's fees. Simple Capital filed a traditional motion for summary judgment and attached, among other items, an affidavit from its representative that handled the purchase, the Contract, the December 7, 2021 letter, the two amendment forms, and various documents executed by Simple Capital on the closing date. The Trust filed a cross-motion arguing there was no enforceable contract because the December 7, 2021 email from Simple Capital terminated the Contract. The Trust attached Carlos's declaration, the Contract, and the December 7, 2021 email from Simple Capital.

The district court signed orders granting Simple Capital's motion and ordering the Trust to close the sale and denying the Trust's motion. Following a bench trial on attorneys' fees, the district court signed a final judgment incorporating its summary-judgment orders and awarding Simple Capital $125,000 in attorneys' fees. This appeal ensued.

## DISCUSSION

Appellants argue in one issue that the district court erred by granting Simple Capital's motion for summary judgment because the Contract is not enforceable.

**Standard of Review**

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). To prevail on a motion for traditional summary judgment, the

movant must show that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, "we review both sides' summary judgment evidence and render the judgment the trial court should have rendered." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022) (citing *Southern Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)).

A genuine issue of material fact exists if the conflict "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

**Analysis**

The Trust argues in its sole issue that the district court erred because there is at least an issue of fact on whether the Trust breached the contract. The elements of a breach-of-contract claim are "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). The Trust argues that there is a fact issue on the first element.

A valid contract requires that "(1) an offer was made"; (2) "the other party accepted in strict compliance with the terms of the offer"; (3) "the parties had a meeting of the

4

minds on the essential terms of the contract"; (4) "each party consented to those terms"; and (5) "the parties executed and delivered the contract with the intent that it be mutual and binding." *Scientific Mach. & Welding, Inc. v. FlashParking, Inc.*, 641 S.W.3d 454, 462 n.6 (Tex. App.—Austin 2021, pet. denied) (citing *Menchaca*, 545 S.W.3d at 502 n.21). The Trust argues that the Contract was valid until Simple Capital "nullified that Contract when it sent two subsequent counteroffers," i.e. the communications of December 7 and December 20, 2021. Simple Capital responds that proposing to modify a contract does not terminate it.

We agree with Simple Capital. The Trust relies on the rule that "[a]n acceptance must not change the terms of an offer; if it does, the offer is rejected." *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In such a situation, the purported acceptance "constitutes a counteroffer, which must be accepted by the other party for there to be a valid contract." *Id.* A counteroffer is different from proposing modification of an existing valid contract. To be valid, a modification "must include a meeting of the minds supported by consideration." *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 647 (Tex. App.—Dallas 2015, no pet.). If accepted, a modification "to a contract creates a new contract that includes the new modified provisions and the unchanged old provisions." *Id.* While a modified contract "constitutes a new agreement that takes the place of the original," *Miller v. McCarty*, 323 S.W.3d 612, 615 (Tex. App.—Texarkana 2010, no pet.), merely proposing a modification does not necessarily terminate the existing agreement, *see generally Blackstone Med.*, 470 S.W.3d at 647; *Miller*, 323 S.W.3d at 615. The Trust characterizes the December 7, 2021 email as a "counteroffer" that "terminated" the Trust's "purported ability to accept the original Contract" but also says the parties had "a signed and fully executed Contract"

on October 21, 2021. The December 7, 2021 and December 20, 2021 emails were proposed modifications, not counteroffers, and neither one terminated the Contract.

The Trust also argues that Simple Capital repudiated the contract.[3] "Repudiation or anticipatory breach is an unconditional refusal to perform the contract in the future, which can be expressed either before performance is due or after partial performance." *Scientific Mach. & Welding*, 641 S.W.3d at 462. "A party repudiates a contract if the party manifests, by words or actions, a definite and unconditional intention not to perform the contract according to its terms." *West Loop Hosp., LLC v. Houston Galleria Lodging Assocs.*, 649 S.W.3d 461, 492 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). The Trust argues that Simple Capital repudiated the Contract because it was "emphatic" in the December 7, 2021 email that "the property was riddled with criminal activity," the local police department recommended evicting the majority of the tenants, there were no more than "5 to 6 good tenants who are paying that have accurate paperwork," the property needed significantly more maintenance than anticipated, and there are "some serious liability issues." The Trust argues that these statements "could be reasonably inferred to mean that Simple Capital was not willing to proceed under the original Contract terms." But Simple Capital notes in the email that it is operating within the existing option

---

[3] Simple Capital argues that we may not consider this argument on appeal because the Trust failed to raise it in the summary-judgment motion. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) ("[I]n the summary judgment context, '[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.'" (quoting Tex. R. Civ. P. 166a(c)). Although the Trust did not use the words "anticipatory breach" or "repudiation," the Trust asserted in its motion for summary judgment that Simple Capital communicated that it would not move forward unless the Trust agreed to the proposed changes. We conclude this was sufficient to preserve the Trust's repudiation argument. *See Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) ("This Court has 'often held that a party sufficiently preserves an issue for review by arguing the issue's substance, even if the party does not call the issue by name.'" (quoting *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020))).

period—thereby acknowledging the existence of a valid contact—and states that it will respect the Trust's decision on the proposed amendments "either way." Nothing in the December 7, 2021 email, the accompanying amendment form, or the amendment form sent on December 20, 2021, raises even a surmise or suspicion that Simple Capital repudiated the Contract.

We conclude the district court did not err in granting Simple Capital's motion for summary judgment and denying the Trust's motion, and we overrule the Trust's sole issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed: April 4, 2024

7