**Affirmed and Opinion Filed July 22, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00870-CV

**BLACKSTONE MEDICAL, INC. D/B/A ORTHOFIX SPINAL IMPLANTS, Appellant**
**V.**
**PHOENIX SURGICALS, L.L.C., Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-00902-D**

## OPINION

Before Justices Bridges, Lang, and Lang-Miers
Opinion by Justice Lang

Blackstone Medical, Inc. d/b/a Orthofix Spinal Implants appeals the trial court's final judgment incorporating the jury verdict and award of $705,232.80 in damages in favor of Phoenix Surgicals, L.L.C. In three issues, Orthofix argues the trial court erred when it denied Orthofix's motions for directed verdict and judgment notwithstanding the verdict because: (1) the statute of frauds precluded, as a matter of law, Phoenix's claims for breach of contract due to wrongful termination of the agreement and promissory estoppel; (2) the trial court applied an improper measure of damages and there is "no evidence to prove recoverable damages" under the correct measure of damages; and (3) the evidence is legally insufficient to support Phoenix's claim for promissory estoppel as to the expense of hiring of a sales "specialist."

Phoenix filed a cross-appeal.  In its sole issue on cross-appeal, Phoenix argues the trial court erred, as a matter of law, when it awarded Phoenix attorneys' fees in an amount less than what Phoenix requested.

We conclude the trial court did not err when it denied Orthofix's motion for a directed verdict and motion for judgment notwithstanding the verdict on Phoenix's claims for breach of contract due to wrongful termination and promissory estoppel.  Also, we conclude the trial court did not err when it declined to award Phoenix all of the requested attorneys' fees.  The trial court's final judgment is affirmed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Orthofix is a manufacturer and supplier of spinal implants, orthopedics, and biologics-related medical products.  Phoenix is an independent, multi-line distributor of medical products, including spinal implant devices.  In March 2009, Orthofix and Phoenix executed a sales representative agreement.  That agreement was effective from February 1, 2009 to December 31, 2011, with automatic renewal for additional one-year periods.  Section 5(J) of the agreement prohibited Phoenix from selling undisclosed competing products:

> J.       During the Term of this Agreement, and except for those products identified in Exhibit C hereto ("Disclosure of Competitive Products Carried by Representative"), Representative shall not, without the prior written consent of Company, solicit sales of any product competitive with or similar to any of the Products, nor act as distributor, representative, agent, dealer or otherwise on behalf of any manufacturer of any such competitive or similar product. Representative shall keep the Company informed of all other companies or business establishments whose merchandise the Representative represents. In the event Company adds a new Product to this Agreement which competes with a third party product being carried or offered by Representative, Representative agrees to not renew its representation of such third party with respect to the competitive product upon the expiration or termination of such representation without obtaining the written consent of the Company.

In addition, section 9 contained provisions addressing the early termination of the agreement:

> 9.       TERMINATION

A. **Termination for Cause.** The following actions by or events involving [Phoenix] shall each constitute a material breach of this Agreement and give [Orthofix] an immediate right, but not obligation, to terminate this Agreement for cause:

. . . .

5. Any material breach of obligations under this Agreement, including, but not limited to any violation of the provisions of Section 5;

. . . .

B. **Termination without Cause.** Company may terminate this Agreement without cause by providing thirty (30) days' written notice to [Phoenix]. In the event of termination without cause by [Orthofix], [Orthofix] shall pay to [Phoenix] a lump sum amount equal to the average monthly commission received by [Phoenix] during the previous six (6) months for each month that would have remained during the Term of this Agreement or one (1) year, whichever is shorter.

During the contractual relationship, Phoenix distributed and sold products manufactured by Orthofix's competitors and Phoenix fully disclosed its sales activities to Orthofix. Also, during the contractual relationship, Orthofix and Phoenix discussed Phoenix hiring a "sales specialist" to exclusively sell Orthofix's Trinity® Evolution™ biologics product in the Boston area. Orthofix and Phoenix discussed sharing the cost of Phoenix hiring this "sales specialist" for the first six months of employment. Based on this understanding, Phoenix hired a "sales specialist," Cheri Malo, and paid her salary.

On August 26, 2010, Orthofix sent Phoenix a letter terminating their agreement. That letter stated, in part:

It has come to our attention that Phoenix Surgicals, LLC[,] has been actively soliciting sales of competitive products in violation of the terms of the above-referenced agreement. In light of Phoenix's material breach of its obligations, Blackstone hereby terminates the agreement for cause, effective immediately.

The agreement states that "Phoenix shall not, without the prior written Consent of Blackstone, solicit sales of any product competitive with or similar to any of the Products, nor act as distributor, representative, agent, dealer or otherwise on behalf of any manufacturer of any such competitive or similar product." Nevertheless, Phoenix has been actively soliciting sales of competitive products

–3–

manufactured by at least the following Blackstone competitors: Lanx, Orthovita, Spine Wave, Spinology, US Spine, and Vertiflex. Such activity constitutes a material breach of the agreement.

(Footnotes omitted.)

On September 14, 2012, Phoenix filed its second amended petition, asserting several claims, including one for breach of contract due to wrongful termination.[1] Phoenix alleged, in part:

> Notwithstanding Orthofix's contentions to the contrary, [Orthofix's] termination of the [a]greement was done without cause or justification. Despite Phoenix having fulfilled all conditions precedent, Orthofix breached the [a]greement by wrongfully and improperly terminating [Phoenix] without justification or cause. As a result, Orthofix has proximately caused, and continues to cause, Phoenix direct and consequential damages . . .

The crux of Phoenix's wrongful termination claim was that Orthofix breached the agreement when it claimed it was terminating the agreement "with cause" because "Phoenix had been soliciting the sales of products of Orthofix's competitors" in violation of the agreement's exclusivity provision. Phoenix asserted that Orthofix terminated the agreement "without cause," in part, because Orthofix was fully aware that Phoenix was selling competitor's products and waived enforcement of the exclusivity provision prohibiting the sale of competitor's products. In its prayer for relief, Phoenix sought all actual, compensatory, and consequential damages, and a declaration that it was entitled to the lump sum payment due under the parties' agreement as a result of a termination of the agreement without cause. On October 23, 2012, Phoenix filed a supplement to its second amended petition, adding the affirmative counter-defenses of estoppel and waiver with respect to its claim for breach of contract due to wrongful termination.

---

[1] In that petition, Phoenix alleged claims against Orthofix for breach of contract for unpaid commissions, breach of contract due to wrongful termination of the agreement, breach of contract for wrongful sales and distribution of Orthofix products, breach of the covenant of good faith and fair dealing, tortious interference with existing contracts, tortious interference with prospective contracts, violations of the Connecticut Franchise Act, violations of the Connecticut Unfair Trade Practices Act, unjust enrichment, and declaratory judgment. In the alternative to its claim for breach of contract due to wrongful termination, Phoenix alleged a claim for promissory estoppel. Also, Phoenix sought recovery of its attorneys' fees. Phoenix's original and first amended petition are not included in the clerk's record on appeal.

On January 6, 2012, Orthofix's filed its first amended answer and counterclaim, generally denying the allegations and asserting the affirmative defenses of failure to state a claim on which relief may be granted, the claims are barred by the statute of frauds, the doctrine of merger, and the parol evidence rule, Phoenix suffered no compensable damages, justification, and Phoenix's claims are barred by its own inequitable conduct.[2] Also, Orthofix specifically denied acting with malice, and that its conduct or intent justified the submission of a jury question on exemplary damages. Further, Orthofix asserted a counterclaim for breach of contract, alleging Phoenix breached the agreement by initiating litigation in Connecticut. Orthofix sought attorneys' fees on its breach of contract counterclaim.

On January 11, 2013, the trial court granted, in part, and denied, in part, Orthofix's motions for traditional and no-evidence summary judgment, ordering that Phoenix take nothing on some of its claims.[3] However, the trial court denied the motions as to Phoenix's claims for breach of contract due to wrongful termination, breach of contract for unpaid commissions, and request for declaratory judgment. Also, on January 11, 2013, the trial court denied, in its entirety, Phoenix's motion for partial summary judgment on its claims for breach of contract, promissory estoppel, and declaratory judgment based on Phoenix's assertion that Orthofix wrongfully terminated the agreement.

Although Phoenix sought all actual, compensatory, and consequential damages in its second amended petition, on February 5, 2013, during a pretrial hearing, Phoenix stated, on the record, it was not submitting lost sales and profits as a measure of damages. Instead, Phoenix stated it was seeking the "liquidated damages" provided for in section 9(B) of the agreement.

---

[2] Orthofix's original answer is not included in the clerk's record on appeal.

[3] Specifically, the trial court ordered that Phoenix take nothing on its claims for unjust enrichment, breach of the covenant of good faith and fair dealing, breach of contract for wrongful sales and distribution of Orthofix products, tortious interference with existing contract, tortious interference with prospective contracts, violations of the Connecticut Franchise Act, and violations of the Connecticut Unfair Trade Practices Act.

Orthofix responded that the provision was not a liquidated damages provision, but a contractual penalty, and the only available measure of damages was lost profits. The trial court declined to rule whether the provision was a liquidated damages provision or penalty during the pretrial hearing.

On February 8, 2013, after the close of the presentation of all evidence, Orthofix filed its motion for directed verdict. On February 11, 2013, after a hearing, the trial court signed an order granting a directed verdict as to Phoenix's alternative claim for promissory estoppel for wrongful termination. However, the trial court denied Orthofix's motion for directed verdict as to Phoenix's claims for breach of contract due to wrongful termination of the agreement, promissory estoppel as to the expenses of hiring the "sales specialist," Malo, and breach of contract for unpaid commissions. Those claims proceeded to the jury, which found in favor of Phoenix and awarded Phoenix a total of $705,232.80 in damages: $668,826, the lump sum fee provided for in section 9(B) of the agreement, for breach of contract due to wrongful termination of the agreement; $27,503 on the claim for promissory estoppel as to the hiring of Malo; and $8,903.80 for breach of contract for unpaid commissions.

On February 22, 2013, Phoenix filed its application for attorneys' fees, seeking a total of $340,322.75. On March 25, 2013, Phoenix filed a motion for leave to file its third amended petition accompanied by the amended petition. Phoenix's third amended petition added, in part, a statement that as to its claim for breach of contract due to wrongful termination, "Phoenix's damages are, at a minimum, the amount equal to the lump-sum payment required by the [agreement] when terminated by Orthofix without cause." Also, Phoenix added, in part, a claim for promissory estoppel, alleging "Phoenix justifiably relied on Orthofix's promise to share in the expense of hiring independent contractor, Cheri Malo, which also caused financial detriment

to Phoenix for which it now seeks compensation." Also, on March 25, 2013, Orthofix filed its motion for judgment notwithstanding the verdict.

On April 1, 2013, the trial court granted Phoenix's motion for leave to file its third amended petition. On April 2, 2013, the trial court signed an order denying Orthofix's motion for judgment notwithstanding the verdict. Also, on April 2, 2013, the trial court signed the final judgment, which incorporates the jury's verdict and awarded Phoenix $200,000 in attorneys' fees. On May 2, 2013, Phoenix filed a motion for new trial, which was overruled by operation of law.

## II. BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIMS

In issue one, Orthofix argues four points: (1) the trial court erred when it denied Orthofix's motion for directed verdict on Phoenix's claim for breach of contract due to wrongful termination; (2) the trial court erred when it denied Orthofix's motion for directed verdict on Phoenix's claim for promissory estoppel; (3) the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict on Phoenix's claim for breach of contract due to wrongful termination; and (4) the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict on Phoenix's claim for promissory estoppel. In issue two, Orthofix argues two points: (1) the trial court erred when it denied Orthofix's motion for directed verdict on Phoenix's claim for breach of contract due to wrongful termination as to the measure of damages; and (2) the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict on Phoenix's claim for breach of contract due to wrongful termination as to the measure of damages. Issue three includes two points: (1) the trial court erred when it denied Orthofix's motion for directed verdict on Phoenix's claim for promissory estoppel; and (2) the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict on Phoenix's claim for promissory estoppel. We divide these issues

into two main categories addressing: (1) the breach of contract claim; and (2) the promissory estoppel claim.

## A. *Standards of Review*

### 1. Standard of Review for Denial of Motion for Directed Verdict

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 619 (Tex. App.—Dallas 2010, no pet.); *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). A directed verdict for a defendant may be proper in two situations: (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000); *Mauricio v. Castro*, 287 S.W.3d 476, 479 (Tex. App.—Dallas 2009, no pet.). If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220–21 (Tex. 2011); *see also Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 685 (Tex. App.—San Antonio 2012, no pet.).

The standard of review for the denial of a directed verdict is a legal sufficiency or "no evidence" standard of review. *Mauricio*, 287 S.W.3d at 478–79. When reviewing a directed verdict, an appellate court considers all the evidence in a light most favorable to the nonmovant, and resolves all reasonable inferences that arise from the evidence admitted at the trial in the nonmonvant's favor. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Mikob Props., Inc. v. Joachim*, No. 05-13-01613-CV, 2015 WL 2394117, at *4 (Tex. App.—Dallas May 19, 2015, no pet. h.).

**2. Standard of Review for Denial of Motion for Judgment Notwithstanding the Verdict**

A trial court should grant a motion for judgment notwithstanding the verdict when: (1) the evidence is conclusive and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery. *Kwik Indus., Inc. v. Rock Prairie Holdings, Ltd.*, No. 05-13-00054-CV, 2015 WL 1449902, at *7 (Tex. App.—Dallas Mar. 30, 2015, no pet.) (mem. op.); *Iroh v. Igwe*, No. 05-13-00027-CV, 2015 WL 1261818, *3 (Tex. App.—Dallas Mar. 19, 2015, no pet. h.); *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 662 (Tex. App.—Dallas 2004, pet. denied); *see* TEX. R. CIV. P. 301. A judgment notwithstanding the verdict is proper when a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied). Also, the standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for the denial of a motion for directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review"); *Iroh*, 2015 WL 1261818, at *3 n.3.

**B. *Phoenix's Claim for Breach of Contract Due to Wrongful Termination***

In issue one, points one and three, and issue two, points one and two, Orthofix argues the trial court erred when it denied Orthofix's motion for directed verdict and motion for judgment notwithstanding the verdict on Phoenix's claim for breach of contract due to wrongful termination. Specifically, Orthofix contends it proved, as a matter of law, its affirmative defense of statute of frauds, which bars Phoenix's breach of contract claim. Also, Orthofix asserts the evidence precludes, as a matter of law, the damages element of Phoenix's breach of contract claim.

**1. Motion for Directed Verdict as to the Affirmative Defense of Statute of Frauds**

In the first point of issue one, Orthofix claims it conclusively established its affirmative defense of statute of frauds, which barred Phoenix's claim for breach of contract due to wrongful termination. It is Orthofix's contention that what Phoenix claims was a waiver of compliance is actually an oral modification that is precluded by the statute of frauds. Phoenix responds that the statute of frauds does not apply because Phoenix claimed Orthofix waived compliance with the written contract, not that there was an oral modification.

**a. Applicable Law**

The contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded. *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied); *see RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327 (Tex. App.— Houston [1st Dist.] 1997, pet. denied); *see generally*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (referring to prior material breach as an affirmative defense to a contract claim). When one party to a contract commits a material breach of that contract, the other party is excused from any obligation to perform. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *Compass Bank*, 152 S.W.3d at 852.

Waiver is an affirmative defense that must be affirmatively pleaded. TEX. R. CIV. P. 94. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *In re Gen Elec. Corp.*, 203 S.W.3d 314, 316 (Tex. 2006). Waiver may be express or implied. Waiver may be established by showing a party has expressly renounced a known right. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex. 1999); *Martin v. Birenbaum*, 193 S.W.3d 677, 681 (Tex. App.—Dallas 2006, pet. denied). Also, an implied waiver may be established by showing a party's prolonged silence or inaction in

–10–

asserting a known right. *El Paso Indep. Auto. Dealers*, 1 S.W.3d at 111; *Martin*, 193 S.W.3d at 681. Waiver is largely a matter of intent. *El Paso Indep. Auto. Dealers*, 1 S.W.3d at 111. Ordinarily, waiver is a fact question, but it may be established as a matter of law when the facts and circumstances are admitted or clearly established. *El Paso Indep. Auto. Dealers*, 1 S.W.3d at 111; *Martin*, 193 S.W.3d at 681. Statements made and conduct occurring before the signing of the agreement cannot constitute waiver of the terms in the agreement. *Comiskey v. FH Partners, L.L.C.*, 373 S.W.3d 620, 640 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Modification of a contract is an affirmative defense. *White v. Harrison*, 390 S.W.3d 666, 674 (Tex. App.—Dallas 2012, no pet.). A modification to a contract creates a new contract that includes the new modified provisions and the unchanged old provisions. *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547–48 (Tex. App.—Houston [1st Dist.] 1994, no writ). A valid contract modification must include a meeting of the minds supported by consideration. *White*, 390 S.W.3d at 674. An oral modification of a written contract is enforceable under the statute of frauds only if the modification does not materially alter the obligations imposed by the underlying agreement. *White*, 390 S.W.3d at 674.

The contention that an agreement falls within the statute of frauds is an affirmative defense. TEX. R. CIV. P. 91; *Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). The party pleading the statute of frauds bears the burden of establishing its applicability. *Berryman's South Fork, Inc. v. J. Baxter Brinkman Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied); *Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex. App.—Dallas 2012, no pet.). Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009); *Berryman's*, 418 S.W.3d at 192; *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.).

The question of whether an agreement falls within the statute of frauds is one of law. *Berryman's*, 418 S.W.3d at 192; *Biko*, 246 S.W.3d at 159; s*ee Bratcher v. Dozier*, 162 Tex. 319, 321, 346 S.W.2d 795, 796 (1961). However, whether the circumstances of a particular case fall within an exception to the statute of frauds is generally a question of fact. *See Berryman's*, 418 S.W.3d at 192; *Kalmus*, 390 S.W.3d at 589.

### b. Application of the Law to the Facts

In its pleadings, as more fully described above, Phoenix asserted that Orthofix breached the contract by wrongfully terminating its agreement with Phoenix without cause or justification. Orthofix asserted the affirmative defense of the statute of frauds on the basis that it barred Phoenix's claims. In its third amended petition, Phoenix asserted the affirmative counter-defense of waiver in response to Orthofix's affirmative defenses.

In its motion for directed verdict, Orthofix argued, in part, that the evidence conclusively established that Orthofix's breach of contract was excused because of a prior material breach of the agreement by Phoenix. Further, Orthofix argued that all of the alleged oral agreements that Phoenix claimed amended the agreement, constituting a waiver of compliance by Orthofix and excusing Phoenix's prior material breach "are barred under both the statute of frauds and the express terms of the [a]greement." Phoenix responded to the motion arguing it presented evidence that Orthofix breached the agreement when Orthofix purported to terminate that agreement "for cause," Orthofix waived compliance with the exclusivity provision of the agreement, and the agreement is not subject to the statute of frauds. The trial court denied Orthofix's motion for directed verdict as to Phoenix's claim for breach of contract due to wrongful termination of the agreement.

On appeal, in contrast to the arguments made in its motion for directed verdict, Orthofix argues only that the evidence conclusively established its affirmative defense of statute of frauds,

–12–

which barred Phoenix's affirmative defense of oral modification. However, Phoenix did not assert the affirmative counter-defense of oral modification. Instead, Phoenix argued that Orthofix's conduct constituted an implied waiver of compliance with certain contract provisions. Further, the record reflects there was some evidence adduced at trial that, during the contractual relationship, Phoenix disclosed its sales activities to Orthofix and, for a period of time, Orthofix remained silent or did not act to assert its rights under the agreement. *See El Paso Indep. Auto Dealers*, 1 S.W.3d at 111 (implied waiver may be established by showing party's prolonged silence or inaction in asserting known right). Accordingly, we conclude the trial court did not err when it denied Orthofix's motion for directed verdict on its affirmative defense of statute of frauds as to the breach of contract due to wrongful termination.

The first part of issue one is decided against Orthofix.

### 2. Motion for Judgment Notwithstanding the Verdict as to the Affirmative Defense of Statute of Frauds

In the third point of issue one, Orthofix contends that, as a matter of law, the statute of frauds precludes Phoenix's claim for breach of contract because "[a]llowing Phoenix to recover by using alleged subsequent oral modifications to contradict the parties' valid, proven contract would defeat the recognized purposes of the statute of frauds to safeguard the integrity of written instruments against fraud, remove uncertainty, and reduce litigation."

Phoenix responds that question number 1 of the jury charge, which asked whether Orthofix breached the contract by terminating the agreement under section 9(A)(5), "did not require the jury to find that the [agreement] had been orally modified in order [for the jury] to answer [the question] in the affirmative." Also, Phoenix contends that the jury may have determined Orthofix's breach was not excused because there was no prior material breach of the contract by Phoenix. As a result, Phoenix claims the jury could have found in favor of Phoenix

without reaching the issue of whether Phoenix's prior material breach was excused because Orthofix waived compliance.

### a. Probable Rendition of an Improper Judgment

An appellant must attack all independent bases or grounds that fully support a complained of ruling or judgment. *Creech v. Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 411 S.W.3d 1, 6 (Tex. App.—Dallas 2013, no pet.); *Oliphant Fin. L.L.C. v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.). If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, an appellate court must accept the validity of that unchallenged independent ground, and any errors in the grounds challenged on appeal are harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *Oliphant*, 295 S.W.3d at 423–24; *Prater v. State Farm Lloyds*, 217 S.W.3d 739, 740–41 (Tex. App.—Dallas 2007, no pet.).

The harmless error rule states, in part, that before reversing a judgment because of an error of law, an appellate court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). The harmless error rule applies to all errors. *Magee*, 347 S.W.3d at 297 (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 819–20 (Tex. 1980)).

### b. Application of the Law to the Facts

Question number 1 of the trial court's jury charge contained one question with two instructions. The question was whether Orthofix breached the contract. The instructions were that Orthofix's breach was excused if there was a prior material breach of the contract by

Phoenix and Phoenix's prior material breach was excused if Orthofix waived compliance.

Specifically, question number 1 of the trial court's jury charge states:

**Question Number 1**

Did Orthofix fail to comply with the Sales Representative Agreement by terminating the Sales Representative Agreement under Section 9(A)(5)?

Failure to comply by Orthofix is excused by Phoenix's previous failure to comply with a material obligation of the same agreement. In order to properly terminate the Agreement for cause, Phoenix must have materially failed to comply with Section 5(1) of the Agreement by soliciting the sale of products competitive with or similar to Orthofix's products, except for those products otherwise agreed to by Orthofix and Phoenix.

The circumstances to consider in determining whether a failure to comply is material include:

(a)     the extent to which the injured party will be deprived of the benefit which it reasonably expected;

(b)     the extent to which the injured party can be adequately compensated for the part of the benefit of which it will be deprived;

(c)     the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)     the likelihood that the party failing to perform or to offer to perform will cure it's failure, taking into account the circumstances including any reasonable assurances;

(e)     the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Phoenix's non-compliance, if any, with Section (J) of the Agreement is excused if compliance is waived by Orthofix.

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Contractual provisions may be waived even if a contract states all modifications to the written contract must be in writing, but the existence of a contract provision disclaiming waiver and requiring any waiver to be in writing and signed by the waiving party may be some evidence of non-waiver.

The jury answered "Yes" to question number 1.

–15–

Orthofix's burden in this case is to demonstrate that the answer of "Yes" to question number 1 and the finding in Orthofix's favor was error. *See Creech*, 411 S.W.3d at 6. The language of question number 1 shows that because question number 1 was submitted with the two instructions described above, the jury may have answered question number 1 "Yes" because it found: (1) Orthofix breached the contract and Orthofix's breach was not excused because there was no prior material breach of the contract by Phoenix, or (2) Orthofix breached the contract and Orthofix's breach was excused because of a prior material breach of the contract by Phoenix and Phoenix's prior material breach was excused because Orthofix waived compliance. However, on appeal, Orthofix argues only that the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict because the statute of frauds prohibited the inclusion of the instruction that Phoenix's prior material breach could be excused if Orthofix waived compliance. Orthofix does not argue error because there was no evidence to support the jury's finding that Orthofix breached the contract and Orthofix's breach was not excused because there was no prior material breach of the contract by Phoenix. As a result, Orthofix fails to attack all independent bases or grounds that fully support the jury's verdict. *Creech*, 411 S.W.3d at 6; *Oliphant*, 295 S.W.3d at 423–24.

Assuming, without deciding, the trial court erred when it denied Orthofix's motion for judgment notwithstanding the verdict on the basis argued because, as a matter of law, the statute of frauds prohibited the inclusion of the instruction that Phoenix's prior material breach could be excused if Orthofix waived compliance, that error is harmless because Orthofix fails to challenge on appeal an independent ground that fully supports the jury's verdict. *See Oliphant*, 295 S.W.3d at 423–24; *Prater*, 217 S.W.3d at 740–41.

The third point of issue one is decided against Orthofix.

### 3. Breach of Contract - Element of Damages

In issue two, points one and two, Orthofix argues that the lump-sum provision in section 9(B) of the agreement "is not an available measure of damages" for breach of contract because: (1) Orthofix elected to terminate the agreement for cause under section 9(A) and risk a wrongful termination lawsuit resulting in damages, and the lump-sum provision contained in section 9(B), which addresses termination of the agreement without cause, cannot be substituted for those damages; and (2) Phoenix abandoned its claim for lost profits, which is the only appropriate measure of damages for wrongful termination. Also, Orthofix contends that there was no evidence of the proper measure of damages, i.e., lost profits, because Phoenix presented no evidence of damages and stipulated that it "suffered no damages as a result of the alleged wrongful termination, save and except Orthofix's failure to pay the lump-sum payment." Phoenix responds that the jury found Orthofix terminated the agreement without cause and there is "no legal support for Orthofix's efforts to dodge the lump-sum payment due [to] Phoenix."

### a. Motion for Directed Verdict as to the Element of Damages

In its motion for directed verdict, Orthofix argued the lump sum provided for in the agreement for termination without cause was not a liquidated damages provision, and if it was, it is unenforceable because it is a disproportionate penalty. Relying on a case from the Delaware Court of Chancery, Orthofix argued the lump-sum provision was not a liquidated damages provision because a termination fee is different than liquidated damages paid in the event of a breach of contract. *See Brazen v. Bell Atl. Corp.*, No. 14976, 1997 WL 153810 (De;. Ch. Mar. 19, 1997) (mem. op.) *affirmed on other grounds* 695 A.2d 43 (Del. 1997). Also, Orthofix argued that if the lump-sum provision is a liquidated damages clause, it cannot be enforced because Orthofix has proven that Phoenix did not incur any actual damages. Phoenix responded that "Phoenix and Orthofix agree the lump-sum payment due under the [agreement] in the event of

termination without cause by Orthofix is not a liquidated damages provision. Hence, Orthofix's arguments in its directed verdict motion asserting the lump[-]sum payment obligation is not enforceable must be ignored."

During the hearing on Orthofix's motion for directed verdict, Orthofix initially stated it was not going to argue the portion of its motion relating whether the lump-sum provision in the agreement was a liquidated damages clause because Phoenix "has stipulated that the [section] 9(B) fee or buyout lump[-]sum payment is not a liquidated damages clause." However, by the end of the hearing, Orthofix contended that "[t]here was no way you get to the [lump-sum] fee unless it is a liquidated damages provision, and [Phoenix] ha[s] abandoned that contention." The trial court denied Othofix's motion for directed verdict as to Phoenix's claim for breach of contract due to wrongful termination.

Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1. Complaints and arguments on appeal must correspond with the complaint made at the trial court level. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.). To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court. *Tate v. Andrews*, 372 S.W.3d 751, 754 (Tex. App.—Dallas 2012, no pet.); *Knapp*, 281 S.W.3d at 170–71.

On appeal, Orthofix does not argue or cite to case law relating to liquidated damages and the enforceability of such provisions. As a result, Orthofix's motion for directed verdict and argument during the hearing did not apprize the trial court of the argument it now makes on

appeal. Accordingly, we conclude Orthofix failed to preserve issue two, point one, for appellate review. *See* TEX. R. APP. P. 33.1.

**b. Motion for Judgment Notwithstanding the Verdict as to the Element of Damages**

During the jury charge conference, Orthofix objected to question number 2, arguing the lump-sum payment provided for in the agreement in the event the contract was "Terminat[ed] without Cause" was not an available measure of damages. Specifically, counsel for Orthofix argued:

> Orthofix objects to Question 2 for failure to include a limined [sic] instruction to the effect that the lump sum payment set forth in Section 9(B) of the sales representative agreement is unavailable as a form of damages. If the jury finds a breach of the sales representative agreement and answers Question Number 1, it is Orthofix's position that the lump sum payment that would result from a without-cause termination of the sales representative agreement under Section 9(B) of the agreement is not triggered by with-cause termination under Section 9(A) of the agreement even if the jury finds the cause asserted by Orthofix was deficient. Thus the lump sum payment is unavailable as a matter of law. And as a result, Orthofix objects to the absent instruction to the effect the lump sum payment is unavailable as a form of damages and hereby requests such an instruction.

The trial court denied Orthofix's objection to question number 2.

Question number 2 of the trial court's jury charge states:

**Question Number 2**

> What sum of money, if any, paid now in cash, would fairly and reasonably compensate Phoenix for its damages, if any, that resulted from Orthofix's termination of the Sales Representative Agreement you identified in answer to Question Number 1?

> In answering questions about damages, answer each jury question separately. Do not increase or decrease the amount in one answer because of your answer to any other questions about damages relating to the other claims in other questions. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the [trial] court when it applies the law to your answers at the time of judgment.

> Consider the elements of damages listed herein for this question and none other. Do not add any amount for interest on damages, if any.

The jury answered question number 2 by writing the amount "$668,826" in the space provided. This amount matched the evidence at trial of the amount calculated to be owed pursuant to the lump-sum provision in section 9(B) of the agreement.

After the jury returned its verdict, with the trial court's permission, Phoenix filed its third amended petition, amending its damages on the breach of contract due to wrongful termination of the agreement claims to state, in part, "Specifically, Phoenix's damages are, at a minimum, the amount equal to the lump sum payment required by the [agreement] when terminated by Orthofix without cause."

In its motion for judgment notwithstanding the verdict, Orthofix argued three main points:

> [1.] The [trial court] should disregard the jury's answer to Question Number 2 and award no recovery to [Phoenix] on its wrongful termination claim because the without-cause termination fee provided by § 9(B) of the [agreement] was legally unavailable to [Phoenix] and [Phoenix] stipulated that it suffered no actual damages.
>
> . . . .
>
> [2.] [T]he termination provisions of the [a]greement are exclusive alternatives. Only § 9(B) sets forth a stipulated sum to be paid, while termination under § 9(A) does not trigger any payment. Orthofix elected to terminate the [a]greement under § 9(A) and undertook the accompanying risk of any litigation that might arise and the risk of having to pay expectation damages in the form of lost profits; thus, the separate termination scheme set forth under § 9(B) was never triggered. . . .
>
> Orthofix has found no case allowing a terminated party to recover a without-cause termination fee following a with-cause termination subsequently found to be faulty during litigation.
>
> [3.] In a distributor termination case, the proper measure of damages for a distributor's claim is its "overall business loss," which is often in the form of lost profits. . . . During trial, [Phoenix] stipulated that "it suffered no damages as a result of the alleged wrongful termination, save and except Orthofix's failure to pay the lump sum payment."

(Emphasis added).

These arguments are premised on Orthofix's contention that the jury's finding that Orthofix did not terminate with cause under section 9(A) did not allow for the applicability of section 9(B), which contains the lump-sum provision when the agreement was terminated without cause. However, in question number 1, the question submitted to the jury was whether Orthofix complied with section 9(A) of the agreement. The jury was instructed that in order to terminate for cause, Phoenix must have materially failed to comply with section 5(J) of the agreement. Orthofix argued at trial that it terminated Phoenix for cause, but the jury disagreed. Phoenix's third amended petition claimed the contractually specified damages in section 9(B) were its damages because it was terminated without cause. The record shows the section 9(B) sums are the damages Phoenix contended it was due in the testimony presented to the jury. On appeal, Orthofix argues only that the contractual calculation in section 9(B) of the agreement was not actual lost profits damages. Orthofix cites to no case law demonstrating the lump-sum provision in the agreement could not be awarded as Phoenix pleaded.

It is well-settled that upon breach of contract, a party may pursue any remedy which the law affords in addition to the remedy provided in the contract. *See Accent Builders Co. v. Sw. Concrete Sys., Inc.*, 679 S.W.2d 106, 109 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at *4 (Tex. App.—Waco Apr. 18, 2007, no pet.) (mem. op.). It is critical to the resolution of this case that section 9(B) of the agreement clearly provided for a remedy in the event the agreement was terminated without cause:

> In the event of termination without cause by [Orthofix], [Orthofix] shall pay to [Phoenix] a lump sum amount equal to the average monthly commission received by [Phoenix] during the previous six (6) months for each month that would have remained during the Term of this Agreement or one (1) year, whichever is shorter.

–21–

Accordingly, we conclude the trial court did not err when it denied Orthofix's motion for judgment notwithstanding the verdict as to the element of damages for Phoenix's claim for breach of contract due to wrongful termination.

Issue two, point two is decided against Orthofix.

### *C. Promissory Estoppel Claim*

In issue one, points two and four, and issue three, points one and two, Orthofix argues the trial court erred when it denied Orthofix's motion for directed verdict and motion for judgment notwithstanding the verdict on Phoenix's promissory estoppel claim.

### 1. Motion for Directed Verdict on Promissory Estoppel Claim

As to its motion for directed verdict, Orthofix contends "The statute of frauds [] bars the alleged oral promise—that Orthofix would share the cost of hiring Malo as a dedicated sales representative for the Trinity® Evolution™ product—underlying Phoenix's promissory estoppel claim." As a result, Orthofix claims the evidence is legally insufficient to support that claim. In addition, Orthofix argues the alleged oral promise is governed by section 5(C) of the representative sales agreement and the evidence is legally insufficient to prove the alleged oral promise to share costs was outside the terms of the agreement.

Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. TEX. R. APP. P. 33.1. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1.

In its motion for directed verdict, the only argument Orthofix made with respect to the promissory estoppel claim relating to the agreement to share the expenses for Malo was

"Phoenix has failed to present evidence raising a fact issue as to the existence of an agreement regarding Cheri Malo." During the hearing on Orthofix's motion for directed verdict, the trial court inquired, "So now, what about the claim for promissory estoppel regarding the alleged agreement for Cheri Malo's expenses? Why do you believe I should grant directed verdict on that? . . . . Why would promissory estoppel not fit there?" Counsel for Orthofix withdrew the argument, stating:

> I was really thinking of the contract termination lump sum payment. I don't think the same arguments apply to Cheri Malo because I can't think of any reason why she's within the statute of frauds or—and you're right that if those—you know, whatever those damages were, they were of reliance nature. So I'm not going to quarrel with you on Cheri Malo.

In its order disposing of Orthofix's motion for directed verdict, the trial court granted the motion as to the alternative claim for promissory estoppel relating to the wrongful termination of the agreement, but denied the motion as to the unpleaded claim for promissory estoppel "as to the hiring of [] Malo."

We conclude Orthofix has failed to preserve for appeal its argument that the trial court erred when it denied Orthofix's motion for directed verdict on Phoenix's claim for promissory estoppel. *See* TEX. R. APP. P. 33.1. The second point of issue one and the first point of issue three are decided against Orthofix.

## 2. Motion for Judgment Notwithstanding the Verdict on Promissory Estoppel Claim

As to its motion for judgment notwithstanding the verdict, Orthofix argues "The statute of frauds [] bars the alleged oral promise—that Orthofix would share the cost of hiring Malo as a dedicated sales representative for the Trinity® Evolution™ product—underlying Phoenix's promissory estoppel claim." As a result, Orthofix claims the evidence is legally insufficient to support that claim. In addition, Orthofix argues the alleged oral promise is governed by section 5(C) of the agreement and the evidence is legally insufficient to prove the alleged oral promise to

share costs was outside the terms of the agreement. Phoenix responds that its promissory estoppel claim "does not seek to alter, counter, or defeat its responsibility and liability for [] Malo." Phoenix claims that Phoenix "took and assumed full responsibility and liability for [] Malo," by recruiting, training, and paying her.

### a. Applicable Law

In some cases, promissory estoppel is used as a counter-defensive plea. *Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 46 n.1 (Tex. App.—Waco 2002, no pet.). In those circumstances, promissory estoppel may be used to bar the application of the statute of frauds and allow enforcement of an otherwise unenforceable oral promise. *Id.* Promissory estoppel defeats a statute of frauds defense if a plaintiff proves all elements of a cause of action for promissory estoppel in addition to showing that the defendant promised to sign a written document complying with the statutes of frauds. *Ortiz v. Collins*, 203 S.W.3d 414, 425 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Although promissory estoppel is normally a counter-defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise. *See Frost*, 110 S.W.3d at 44; *Bechtel Corp. v. Citgo Products Pipeline Co.*, 271 S.W.3d 898, 926 (Tex. App.—Austin 2008, no pet.). Generally, promissory estoppel is a viable alternative to breach of contract. *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The promissory estoppel doctrine presumes that no contract exists. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). Although promissory estoppel is not applicable to a promise covered by a valid contract between the parties, promissory estoppel will apply to a promise outside a contract. *Trevino*, 400

–24–

S.W.3d at 146; *see Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.).

The parol evidence rule excludes only prior and contemporaneous negotiations. *See Garcia v. Karam*, 276 S.W.2d 255, 258 (Tex. 1955); *Sheffield v. Gibson*, No. 14-06-00483-CV, 2008 WL 190049, *3 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, no pet.) (mem. op.). The parol evidence rule does not apply to agreements made subsequent to the written agreement. *Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex. 1979); *Garcia*, 276 S.W.2d at 258; *Sheffield*, 2008 WL 190049, at *3; *Digby v. Tex. Bank*, 943 S.W.2d 914, 928 (Tex. App.— El Paso 1997, writ denied); *Mortgage Co. of Am. v. McCord*, 466 S.W.2d 868, 871 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) ("Extrinsic evidence may always be offered to show a new agreement or that an existing written contract has been changed, waived, or abrogated in whole or in part.").

### b. Application of the Law to the Facts

Question number 3 of the jury charge contained one question and states, "Did Phoenix and Orthofix agree to share in the expense of a dedicated biologics sales representative (Cheri Malo) for the Boston area?" The jury answered "No" to question number 3, finding there was no agreement. Orthofix does not challenge the jury's answer to question number 3 on appeal. Because the jury answered "No," to question number 3, they were instructed to proceed to question number 5, which contained one question and some instructions:

> **Question Number 5**
>
> Did Phoenix reasonably and substantially rely to its detriment on Orthofix's promise, if any, to share in the expense of a dedicated biologics sales representative (Cheri Malo) for the Boston area, and was this reliance foreseeable by Orthofix?
>
> For a person's reliance to be reasonable, he must have exercised reasonable diligence in protecting his own interests. A person's failure to protect

his own interests is not excused by his confidence in the honesty and integrity of the other party.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

Authority for another to act for a party must arise from the party's agreement that the other act on behalf of and for the benefit of the party. If the party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exist f a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows upon an another such indication of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

The jury answered "Yes" to question number 5.

First, we address Orthofix's claim that the statute of frauds bars the oral promise made by Orthofix to Phoenix that it would share in the costs associated with Malo. However, Phoenix did not assert promissory estoppel as a counter-defense to the affirmative defense of statute of frauds. *See Frost Crushed Stone*, 110 S.W.3d at 46 n.1. Instead, Phoenix sought affirmative relief under the equitable doctrine of promissory estoppel based on the premise that it detrimentally relied on Orthofix's oral promise to share in the costs of Malo. Orthofix's statute of frauds argument ignores the basic contention and legal authority under which Phoenix's promissory estoppel claim was brought. *See Frost Crushed Stone*, 110 S.W.3d at 44. Further, the jury found that Phoenix and Orthofix did not agree to share the costs associated with Malo and, on appeal, Orthofix does not challenge that finding by the jury.

Second, we address Orthofix's claim that the alleged oral promise is governed by section 5(C) of the agreement and the evidence is legally insufficient to prove the alleged oral promise to share costs associated with Malo was outside the terms of that agreement. Orthofix argues that the written agreement "extinguished any purported prior promise or understanding between the

parties, in accordance with the merger doctrine, the parol evidence rule, and the express terms of the agreement." However, the parol evidence rule excludes only prior and contemporaneous negotiations. *See Garcia*, 276 S.W.2d at 258; *Sheffield*, 2008 WL 190049, at *3. Orthofix's alleged promise to share in the expense of the "sales specialist," Malo, for the Boston area occurred after the agreement was executed. As a result, the parol evidence rule does not apply to Orthofix's alleged oral promise to the share costs associated with Malo as it was outside the terms of the agreement. *See Lakeway*, 585 S.W.2d at 662; *Garcia*, 276 S.W.2d at 258; *Sheffield*, 2008 WL 190049, at *3; *Digby*, 943 S.W.2d at 928; *McCord*, 466 S.W.2d at 871.

We conclude the trial court did not err when it denied Orthofix's motion for judgment notwithstanding the verdict on Phoenix's claim for promissory estoppel. The fourth point of issue one and the second point of issue three are decided against Orthofix.

### III. ATTORNEYS' FEES

In its sole issue on cross-appeal, Phoenix argues the trial court erred, as a matter of law, when it refused to award Phoenix all of its attorneys' fees. Phoenix argues that its counsel provided an "extensive affidavit" detailing the efforts undertaken in the lawsuit and explained how the $340,322.75 in requested attorneys' fees "advanced all of the claims asserted by Phoenix against Orthofix and the necessity of such legal services." Also, Phoenix argues the only controverting evidence offered by Orthofix was an unverified declaration, arguing Phoenix's counsel failed to properly segregate their fees. Orthofix responds, in part, that Phoenix failed to satisfy its burden to segregate attorneys' fees.

#### A. Standard of Review

An appellate court reviews a trial court's decision to award attorneys' fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *Classic Superoof LLC v. Bean*, No. 05-12-00941-CV, 2014 WL 5141660, *8 (Tex. App.—Dallas Dec. 17, 2014, pet.

denied) (mem. op.); *Jarvis v. Rocanville*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied). If attorneys' fees are proper under section 38.001(8) of the Texas Civil Practice and Remedies Code, the trial court has no discretion to deny them. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009).

The sufficiency of the evidence to support the amount of the award is a relevant factor in assessing whether the trial court abused its discretion. *Jarvis*, 298 S.W.3d at 318. Accordingly, an appellate court reviews the amount awarded under legal and factual sufficiency standards. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 173 (Tex. 1999) (remanding to court of appeals, in part, for consideration of factual sufficiency of attorneys' fees); *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 280 (Tex. 1990) (remanding to court of appeals, in part, for consideration of factual sufficiency of attorneys' fees); *Classic Superoof*, 2014 WL 5141660, at *8 (legal sufficiency); *Brockie v. Webb*, 331 S.W.3d 135, 138–39 (Tex. App.—Dallas 2010, no pet.) (*Brockie II*) (legal and factual sufficiency); *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.) (legal sufficiency); *Cannon v. Castillo*, No. 11-12-00256-CV, 2014 WL 3882190, at *3–4 (Tex. App.—Eastland Aug. 7, 2014, no pet.) (mem. op.) (factual sufficiency).

In reviewing the sufficiency of the evidence supporting an award of attorneys' fees, an appellate court considers the following factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8)

whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (West 2013); *El Apple*, 370 S.W.3d at 760-61; *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brockie II*, 331 S.W.3d at 138–39. When reviewing the record, an appellate court determines whether any evidence supports the award of attorneys' fees. *Brockie II*, 331 S.W.3d at 135, 138–39; *Good v. Baker*, 339 S.W.3d 260, 268 (Tex. App.—Texarkana 2011, pet. denied).

## B. Applicable Law

A party may recover attorneys' fees only as provided by contract or statute. *Tex. Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 570 (Tex. App.—Dallas 2009, no pet.). Section 38.001(8) of the Texas Civil Practice and Remedies Code allows the recovery of attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015); *Smith*, 296 S.W.3d at 547; *Classic Superoof*, 2014 WL 5141660, at *8. To recover attorneys' fees under section 38.001, a plaintiff must: (1) prevail on a cause of action for which attorneys' fees are recoverable; and (2) recover damages. *Classic Superoof*, 2014 WL 5141660, at *8 (citing *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 846 (Tex. App.—Dallas 2014, no pet.)).

To calculate reasonable attorneys' fees, the fact-finder should multiply the number of hours worked by the attorney's hourly rate. *See Guity v. C.C.I. Enter. Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The resulting amount is commonly referred to as the "lodestar" figure. *Guity*, 54 S.W.3d at 528. The party applying for the award of attorneys' fees under the lodestar method bears the burden of proof or "documenting the hours expended on

the litigation and the value of those hours." *El Apple*, 370 S.W.3d at 761–63; *Smith*, 296 S.W.3d at 547.

When applying for a fee under the lodestar method, the applicant must provide sufficient details of the work performed before the court can make a meaningful review of the fee request. *El Apple*, 370 S.W.3d at 764. For purposes of lodestar calculations, this evidence includes, at a minimum, documentation of: (1) the nature of the work; (2) who performed the services and their rate, e.g., if multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks; (3) approximately when the services were performed; and (4) the number of hours worked. *El Apple*, 370 S.W.3d at 763, 764. Although an attorney could testify to these details, in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information. *El Apple*, 370 S.W.3d at 763.

## C. Application of the Law to the Facts

Prior to Phoenix resting its case in chief, the parties stipulated that, if Phoenix prevailed, the issue of Phoenix's attorneys' fees would be submitted to the trial court. After the jury returned a verdict in favor of Phoenix, it filed an application for the award of attorneys' fees attaching the affidavit of Phoenix's attorney as evidence. Phoenix sought a total of $340,322.75 in attorneys' fees. In Orthofix's written response to Phoenix's application for an award of attorneys' fees, Orthofix stated, in part, "[Phoenix's] requested fee should not stand and should instead be reduced from $340,322.75 to $200,000.00, which is more than a reasonable and necessary fee for the claims that were tried and for which fees are recoverable." During the hearing on attorneys' fees, the trial court specifically asked Phoenix's attorney if he thought there was "any problem with [his] affidavit," and Phoenix's attorney answered, "I do not." Also, the trial court noted that Orthofix's attorney had conceded that Phoenix was entitled to $200,000

in attorneys' fees. The trial court's order granting Phoenix's application for attorneys' fees states that the application is "modified consistent with [the] amount awarded in [the] final judgment." The final judgment awarded Phoenix, in part, $200,000 in attorneys' fees. Accordingly, we review the evidence to determine whether Phoenix proved, as a matter of law, that it was entitled to the additional $140,322.75, constituting the remainder of the requested attorneys' fees.

In this case, Phoenix's attorney sought a total of $340,322.75, but did not indicate in his affidavit how the "1,028.25 hours in partner time, 138.40 hours in of counsel and senior associate time, 156 hours in associate time, and 23.4 hours in paralegal time" were devoted to any particular task or category of tasks. *See El Apple*, 370 S.W.3d at 763. Although the affidavit supporting the fee application acknowledges that the attorneys and paralegals billed at different rates, it did not indicate which attorneys or paralegals performed a particular task or category of tasks. *See El Apple*, 370 S.W.3d at 763. Nor did Phoenix's attorney present time records or other documentary evidence of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required. *See El Apple*, 370 S.W.3d at 763–64. Instead, Phoenix's attorney based his firm's time estimates on generalities such as the amount of discovery in the case, and a general description of the factual allegations and the causes of action involved in the case. Further, in his affidavit, Phoenix's attorney makes the general assertion that:

> The foregoing billing rates and attorney's fees were customary, reasonable, necessary, and appropriate in conjunction with the prosecution of Phoenix's claims in this action. In this regard, I am familiar with and have knowledge of the fees charged in the north Texas area for substantially similar litigation. The time expended by me and the other personnel performing the legal services rendered to Phoenix and the fees charged as fully described herein were customary, reasonable, necessary, and appropriate given (1) the time and labor required, the novelty and difficulty of the issues presented, and the skill required to properly perform the legal services, (2) the likelihood that Phoenix's representation by [counsel] would preclude it from other employment and engagements, (3) the fees customarily charged in north Texas for similar legal services, (4) the amount in controversy and the results obtained in this action[,] (5) the time limitations

–31–

imposed by Phoenix and by the circumstances surrounding this action, (6) the nature of the professional relationship between Phoenix and [counsel], (7) the experience, reputation, and ability of [counsel] and the other [] personal performing the services I have described, and (8) attorney's fees Phoenix agreed to following the performance of the legal services described herein and having been previously rendered.

Phoenix's attorney's affidavit provides none of the specificity needed for the trial court to make a meaningful lodestar determination. *See El Apple*, 370 S.W.3d at 763.

We conclude the evidence is legally insufficient to establish Phoenix was entitled to an award of the additional $140,322.75 in attorneys' fees as a matter of law. We express no opinion as to award of attorneys' fees in the amount $200,000 because, on appeal, Orthofix does not challenge the amount of the award of attorneys' fees and, at trial, Orthofix conceded that Phoenix was entitled to $200,000 in attorneys' fees. Phoenix's sole issue on cross-appeal is decided against it.

## IV. CONCLUSION

The trial court did not err when it denied Orthofix's motion for a directed verdict and motion for judgment notwithstanding the verdict on Phoenix's claims for breach of contract due to wrongful termination and promissory estoppel. Also, the trial court did not err when it declined to award Phoenix all of the requested attorneys' fees.

The trial court's final judgment is affirmed.


130870F.P05


/Douglas S. Lang/
_____
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BLACKSTONE MEDICAL, INC. D/B/A
ORTHOFIX SPINAL IMPLANTS,
Appellant

No. 05-13-00870-CV      V.

PHOENIX SURGICALS, L.L.C., Appellee

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-11-00902-D.
Opinion delivered by Justice Lang. Justices
Bridges and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Phoenix Surgicals, L.L.C., recover its costs of this appeal
from appellant Blackstone Medical, Inc. d/b/a Orthofix Spinal Implants and from Westchester
Fire Insurance Company as surety on appellant's cost bond; and the full amount of the trial
court's judgment and the costs of this appeal, to the extent that they exceed the liability of
Westchester Fire Insurance Company as surety on appellant's cost bond, from appellant
Blackstone Medical, Inc. d/b/a Orthofix Spinal Implants and from Westchester Fire Insurance
Company as surety on appellant's supersedeas bond.

Judgment entered this 22nd day of July, 2015.