**Affirmed and Opinion Filed December 30, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00881-CV

### MOHAMED AHMED EL-RAYES, Appellant
### V.
### JONG LEE, Appellee

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-03631-D**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Pedersen, III

Mohamed Ahmed El-Rayes appeals from a judgment rendered in favor of

appellee Jong Lee after a jury trial. El-Rayes argues that the trial court erred in

denying his Motion for New Trial or erred in denying his Motion for Judgment

Notwithstanding the Verdict ("JNOV"). We affirm the judgment of the trial court.

## I. BACKGROUND

Lee sued El-Rayes in July 2017 for negligence—alleging that El-Rayes

caused a car accident that occurred on July 19, 2016, in which Lee was injured. Lee's

original petition contained several discovery requests including document requests

and interrogatories. El-Rayes filed an answer in July 2017 in which he generally

denied Lee's allegations and requested a jury trial. The parties thereafter exchanged discovery.

The case was called to trial before a jury on March 27 and 28 of 2019. Before trial began, the trial court addressed several contested exhibits and motions in limine. Pertinent to our discussion, El-Rayes objected to two particular pieces of evidence. First, El-Rayes objected to the anticipated testimony of Tamara Gaines, a witness to the accident, on the ground that her identity as a witness was not timely disclosed. Second, El-Rayes objected to a video[1] (with excluded audio) that depicted the car accident on the ground that it was not authenticated.[2] In response, Lee argued that there was no unfair surprise to El-Rayes regarding Gaines because El-Rayes "[was] the one that actually disclosed [this] witness to us when [El-Rayes] provided [a] recorded statement." Regarding the video, Lee argued that it could be authenticated through a witness and "treated exactly as [a] photograph[]."

The trial court ultimately (i) permitted Gaines to testify to the jury and (ii) admitted the video into evidence through Gaines's testimony. The jury heard testimony from Lee and El-Rayes. The trial court further admitted (i) medical

---

[1] The reporter's record indicates that this video was recorded by a nearby gas station surveillance camera.

[2] Appellant also raised objections to the video under Texas Rule of Evidence 403, arguing that the video was needless, cumulative and would inflame the jury. *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). However, appellant does not brief those objections, so consequently, we offer no opinion.

records of Lee's injuries, which included a discharge summary from Lee's doctor, and (ii) a counter-affidavit from El-Rayes's medical expert.

After the jury returned a verdict in favor of Lee, the trial court rendered final judgment. El-Rayes timely filed a Motion for New Trial, or in the Alternative, Motion for JNOV in which he argued that the trial court erred when it (i) allowed Gaines to testify, (ii) admitted the video of the accident, and (iii) found causation for Lee's injuries without expert testimony. The trial court denied the motion. This appeal followed.

## II.    ISSUES RAISED

El-Rayes raises one issue, which we reproduce verbatim:

> Whether the trial court erred in denying El-Rayes' Motion for New Trial, or in the alternative, denying his Motion for JNOV.

Though not raised as discrete issues, El-Rayes challenges the legal and factual sufficiency of the evidence that supported the trial court's finding of causation.

## III.    STANDARDS OF REVIEW

New trials may be granted and judgment set aside for good cause. TEX. R. CIV. P. 320. We review the denial of a motion for new trial for an abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). The standard of review for the denial of a motion for JNOV is the same as for the denial of a motion for directed verdict—a challenge to the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal

sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review").

## IV. WHETHER THE TRIAL COURT ERRED IN DENYING EL-RAYES'S MOTION FOR NEW TRIAL

El-Rayes contends that the (i) untimely disclosure of Tamara Gaines, (ii) improper admission of the video, and (iii) lack of expert testimony to establish causation of Lee's injuries was good cause that merited granting a new trial.

*Admissibility of Evidence*

El-Rayes's first two arguments challenge the admission of certain evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles"—if it acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We will uphold the ruling if there is any legitimate basis in the record to support it. *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 490 (Tex. App.—Dallas 2016, pet. denied). To reverse an erroneous evidentiary ruling, an appellant must both establish error and show that the error probably caused an improper judgment. TEX. R. APP. P. 44.1; *Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 183 (Tex. App.—Dallas 2017, no pet.).

–4–

*i.* *Disclosure of Tamara Gaines*

El-Rayes first argues that the trial court erred and abused its discretion in allowing Tamara Gaines to testify because Lee failed to timely disclose Gaines as a witness in his discovery responses. Under rule 193.6, discovery that is not timely disclosed may be inadmissible as evidence. *See* TEX. R. CIV. P. 193.6(a). El-Rayes argues that Lee did not identify Gaines as a person with knowledge of relevant facts or as a potential witness until March 19, 2019, just over a week before the trial began.[3] El-Rayes contends that the trial court abused its discretion when it permitted Gaines to testify because Lee failed to establish any exception to Texas Rule of Procedure 193.6(a) for Lee's untimely disclosure of Gaines.[4]

In response, Lee argued to the trial court, and argues here, that his disclosure of Gaines as a witness was not surprising to El-Rayes because El-Rayes previously

---

[3] El-Rayes refers us to Lee's responses to El-Rayes's request for disclosure made under Texas Rule of Civil Procedure 194.1. *See* TEX. R. CIV. P. 194.1 ("A party may obtain disclosure from another party of the information or material listed in Rule 194.2"); TEX. R. CIV. P. 194.2(e) ("A party may request disclosure of . . . the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case").

[4] Texas Rule of Civil Procedure 193.6 discusses exclusion of evidence when a party fails to timely respond to a discovery response as follows:

> (a) Exclusion of Evidence and Exceptions. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> >
> > (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6.

disclosed Gaines's name and information to Lee. Outside the presence of the jury, counsel for El-Rayes had the following interaction with Judge Rosales about whether El-Rayes disclosed Gaines to Lee:

> <u>El-Rayes's counsel</u>: ". . . I am not saying that he's not–that [Lee's counsel is] telling a false statement. It could be that I just couldn't find it. So I'm not saying that didn't come from us. . . . it might just be our error somehow. I could not find it.
> . . .
> <u>Judge Rosales</u>: . . . if [Lee's counsel] is conveying to the Court that those names were provided by Defendant, I don't see how, one, this would be an unfair surprise to you that this would be a witness that would potentially be called, and two, how that would be an unfair prejudice to you, given that that name, according to [Lee's counsel], was in your files.

It is therefore apparent from the record that counsel for El-Rayes could not controvert whether he disclosed Gaines to Lee.

Although not admitted into evidence, the reporter's record contains an audio recording that El-Rayes made of Gaines on August 1, 2016, and produced to Plaintiff in discovery. In this recording, El-Rayes asked Gaines about the July 19, 2016 accident. The recording contains Gaines answering questions from El-Rayes with statements that match her testimony to the jury. Yet, relying on *Sharp v. Broadway National Bank*, El-Rayes argues that his knowledge of Gaines does not excuse Lee's discovery obligation to timely identify Gaines as a witness. 784 S.W.2d 669, 671 (Tex. 1990) ("The fact that a witness' identity is known to all parties is not itself good cause for failing to supplement discovery"). However, in *Estate of Toarmina*, we specifically held that Texas Rule of Civil Procedure 193.6 permits an

undesignated witness to testify if the trial court finds good cause *or* lack of unfair surprise. No. 05-15-00073-CV, 2016 WL 3267253, at *2 (Tex. App.—Dallas June 13, 2016, pet. denied) (mem. op.).

> In *Oscar Luis Lopez v. La Madeleine of Texas, Inc.*, we held:
>
> We consider this focus on surprise as to the "issues" in a case inaccurate. Although it might be possible that untimely supplemented or amended discovery responses could cause surprise concerning the issues in a case, rule 193.6(a) relates to the discovery of *evidence; its principal purpose—and most common application—is to protect a party from surprise concerning the existence of undisclosed evidence— not issues. The rule applies when the existence of evidence was not disclosed in a timely manner, whether or not such evidence related to an issue both parties knew existed in the case*.

200 S.W.3d 854, 862 (Tex. App.—Dallas 2006, no pet.) (emphasis added). The record shows that El-Rayes had prior knowledge of Gaines. Nevertheless, El-Rayes appears to claim that discovery he independently obtained and disclosed to Lee was unfairly surprising or prejudicial when used as evidence against him. *See* TEX. R. CIV. P. 193.6(a)(2). El-Rayes provides no authority for this contention, and we have found no support, either.

We cannot conclude that the trial court acted without reference to any guiding rules and principles when it permitted Gaines to testify. *See Downer*, 701 S.W.2d at 241–42. We agree with the trial court that there was no unfair surprise or prejudice to El-Rayes in relation to Gaines's testimony. The trial court did not abuse its discretion in allowing the testimony of Gaines.

## ii.    *Admission of the Video*

El-Rayes next argues that the trial court erred and abused its discretion in admitting a video that depicts the accident because the video had been neither timely disclosed nor properly authenticated. *See* TEX. R. CIV. P. 193.6(a).

### A) Untimely Disclosure of the Video

El-Rayes complains that Lee disclosed the video more than a year after the discovery period ended in the case, and therefore, the video should have been automatically excluded under rule 193.6(a). *See* TEX. R. CIV. P. 193.6(a). However, El-Rayes does not direct us to any trial objection that the video had not been timely disclosed.[5] To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record. *See* TEX. R. APP. P. 33.1(a).

When an appellant raises an objection to evidence for the first time in a motion for new trial, the appellant must show a legitimate reason for not raising the objection at trial. *See Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived."); *Jones v. State*, 111 S.W.3d 600, 604 (Tex. App.— Dallas 2003, pet. ref'd) ("Unless the defendant can show a legitimate reason for not

---

[5] El-Rayes directs us to his Motion for New Trial, or in the Alternative, Motion for JNOV in the clerk's record, filed after trial concluded.

timely objecting, error is waived . . . "); *see generally Dallas Ry. & Terminal Co. v. Little*, 109 S.W.2d 289, 295 (Tex. Civ. App.—Dallas 1937, writ dism'd) (discussing that an appellant "should not be heard to complain for the first time in its motion for new trial" if the appellant failed to object during trial). El-Rayes's motion for new trial shows no reason to justify the delay in raising his objection that the video was untimely disclosed.

We conclude that El-Rayes's objection is untimely and that he has waived error. *See Lagrone*, 942 S.W.2d at 618. When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012). Therefore, we may not consider whether the video was untimely disclosed and offer no opinion.

B) Improper Authentication of the Video

El-Rayes next argues that the trial court admitted the video without proper authentication. *See* TEX. R. EVID. 901(a).[6] El-Rayes raised his authentication objection to the trial court. Outside of the presence of the jury, Gaines answered foundational questions about the authenticity of the video prior to its admission into evidence, as follows:

---

[6] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a).

Lee's Counsel: Ms. Gaines, after having watched the video, does the video truly and accurately depict the intersection and the vehicles that were involved in the collision?

Gaines: Yes.

Lee's Counsel: Okay. And[,] did you -- were you able to see your vehicle in the video?

Gaines: I was.

Lee's Counsel: And[,] were you able to see the vehicle of the defendant who you've testified was honking impatiently?

Gaines: Yes.

Lee's Counsel: Okay. And[,] then were you also able to see Mr. Lee's vehicle?

Gaines: Yes.

Lee's Counsel: Okay. And[,] do you have any dispute as to the authenticity of what's depicted on the video?

Gaines: I do not.

Lee's Counsel: Okay. And[,] that is the actual collision that you witnessed?

Gaines: It is.

After El-Rayes questioned Gaines on voir dire as to her recollection of the accident, the trial court admitted the video.

El-Rayes contends that Gaines had no connection to the video and could not testify as to when it was taken, stored, or whether it was altered. El-Rayes also

suggests that Gaines witnessed the accident from a different vantage point than that of the video, thereby diminishing her ability to authenticate the video.

The Texas Supreme Court has discussed videos in the context of personal injury:

> [I]t is important to note that in personal-injury cases, video footage of a plaintiff can originate not only, as here, from defense-initiated surveillance but also from plaintiff-prepared day-in-the-life videos and third-party sources like security cameras and eyewitnesses. Many of the issues we discuss today can arise with any personal-injury plaintiff video, though each form also has its own particular concerns. No matter the type of video, each case must be evaluated individually.

*Diamond Offshore Services Ltd. v. Williams*, 542 S.W.3d 539, 548 (Tex. 2018). "Video can be authenticated by anyone with knowledge of the information recorded, including the party against whom it is offered." *Id*. at 547 n.26 (citing TEX. R. EVID. 1007; *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988); *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314-15 (Tex. 1987). In *S.D.G. v. State*, our sister court discussed the predicate for introduction of a video without audio as follows:

> [Such a recording] requires proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its relevance to a material issue. This predicate need not be laid by the photographer, the person photographed, or even a person who was present when the photograph was taken. *Any witness who observed the object or the scene depicted in the photograph may lay the predicate. The trial court is afforded considerable discretion in ruling on the admissibility of photographic evidence.*

–11–

936 S.W.2d 371, 381 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (internal citations omitted, emphasis added). We agree with our sister court that a witness who observed the object or the scene depicted in a photograph or motion picture may lay the predicate for that evidence. *See id.*

Here, in addition to Gaines's testimony about the video, El-Rayes further testified that the video depicted the accident. Therefore, the record contains evidence from two witnesses—who observed the accident and held knowledge about the accident—that the video accurately depicted the accident. The record shows that the video was adequately authenticated before being admitted into evidence. We cannot conclude that the trial court acted without reference to any guiding rules and principles with respect to admitting the video into evidence. *See Downer*, 701 S.W.2d at 241–42. The trial court did not abuse its discretion in admitting the video into evidence.

*Sufficiency of the Evidence*

El-Rayes's third argument challenges the legal and factual sufficiency of the evidence on the element of causation. "When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We view the evidence in the light most favorable to the fact finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless

a reasonable factfinder could not. *Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018). "When reviewing the record, we determine whether any evidence supports the challenged finding." *Fulgham*, 349 S.W.3d at 157. "If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails." *Id.*; *see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, Inc., 960 S.W.2d 41, 48 (Tex. 1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). We defer to the trial court's fact findings if they are supported by legally sufficient evidence. *Bos*, 556 S.W.3d at 300.

In a challenge to the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding in a neutral light. *Fulgham*, 349 S.W.3d at 157 (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). "We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We defer to the jury's implicit determinations of credibility and the weight to be given to the evidence. *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 408 (Tex. App.—Dallas 2014, no pet.). As long as the evidence falls within the "zone of reasonable

disagreement," we will not substitute our judgment for that of the fact-finder. *City of Keller*, 168 S.W.3d at 822. In conducting a factual sufficiency review, we should detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

### iii.     *Expert Testimony on Causation for Lee's Injuries*

El-Rayes contends the trial court also erred in failing to grant his motion for new trial because there is no expert testimony establishing that he caused Lee's injuries. El-Rayes challenges the legal and factual sufficiency of the evidence supporting causation. El-Rayes relies on *Guevara v. Ferrer*, in which the Texas Supreme Court reiterated the longstanding general rule that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." 247 S.W.3d 662, 665 (Tex. 2007). However, the supreme court acknowledged that under certain circumstances, causation findings linking events and physical conditions could be sufficiently supported by non-expert testimony. *Id.* at 666. In *State Office of Risk Mgmt. v. Adkins* we addressed this exception noted in *Guevara* as follows:

> Lay testimony may establish a sequence of events that provides a strong, logically traceable connection to support a causation finding between the accident and the physical condition when such conditions (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time

–14–

to the accident, and (4) are within the common knowledge and experience of laypersons.

347 S.W.3d 394, 399–400 (Tex. App.—Dallas 2011, no pet.) (citing *Guevara*, 247 S.W.3d at 667).[7] Nevertheless, *Guevara* held that temporal proximity alone does not meet the standards of scientific reliability and does not, by itself, support an inference of medical causation. *Guevara*, 247 S.W.3d at 667.

We have previously held that a jury could causally connect a car accident to plaintiffs' (i) immediate head and neck pain and (ii) medical treatment for that pain without expert testimony. *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 849–50 (Tex. App.—Dallas 2013, no pet.). In *Ten Hagen Excavating Inc.*, we held that an injured party's evidence of injuries from a car accident—of "neck pain, mid-back pain, headaches, left shoulder pain, left leg pain, and chest pain"—coupled with according chiropractic records met the requirements set forth in *Guevara* and connected the injuries to the accident. *Ten Hagen Excavating, Inc.*, 503 S.W.3d at 490 (citing *Guevara*, 247 S.W.3d at 667).

---

[7] We have also discussed *Guevara* in *Edes v. Arriaga*, holding:

> Guevara explained that expert testimony would not be necessary to support a finding of causation if the plaintiff was pulled from a damaged automobile with overt injuries such as broken bones or lacerations and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident. In such a case, "the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons."

No. 05-17-01278-CV, 2019 WL 2266391, at *5 (Tex. App.—Dallas May 24, 2019, no pet.) (mem. op.) (citing and quoting *Guevara*, 247 S.W.3d at 667).

Here, Lee testified about his physical condition before the accident—that he was athletic and had played sports. Lee lived with his mother and three sisters. Lee testified that he was the "man of the house" and would do "all of the cleaning and chores around" the household. Lee further testified that he was always involved "every time there's any heavy weightlifting." Lee testified that he would help his father in the "delivery of wholesale supplies, which consist[ed] of over fifty pounds of weight."

Both Lee and Gaines testified that El-Rayes was responsible for causing the accident. Lee, Gaines, and El-Rayes agreed that the collision was "powerful." Lee testified that he was travelling forty miles per hour before the impact; at impact, his entire body shifted forward; his right knee struck his car. Lee testified that he "hurt a lot," "[his] arms were all burned, [he had] bleeding on [his] right arm," and that his eyebrow was bleeding. The record shows that Lee presented to an emergency room after the accident, complaining of pain in his "entire body"—specifically including his knees, back, arms, and wrist. The record shows that Lee's pain had not subsided five days after the accident. Lee testified that he could not raise his arms, drive, or go to school right after the accident and that he was bedridden. Lee testified that "until three months after the accident, [he] wasn't even able to lift . . . ten [or] twenty pounds. It—it would just cause headaches, too much stress, just pain all over [his] body." Lee testified he could not help his mother and sisters lift heavy items or help his father lift heavy items for at least six to eight months after the accident. Lee

testified that he did not have any of these issues before the accident. Lee testified that his right knee was still impaired and that he continued to experience headaches and pain in his back and legs. Lee testified that his back pain continued to affect his sleep and caused him so much pain that he "wanted to cry."

The admitted evidence includes medical records from Dr. Jeffrey C. Komenda, who treated Lee from July 21, 2016, to his discharge on December 2, 2016.[8] Dr. Komenda's discharge summary notes that Lee "was in good health before the accident occurred and not having any current neck, back, shoulder, or other pains like he was experiencing since right after the accident." Dr. Komenda's discharge summary for Lee includes several statements about Lee's physical condition—noting soreness over the sternum and ribs; bruises on arms and legs; tenderness and pain in the right shoulder; limited range of motion; pain that radiated in the neck area; back pain; numbness and pain "radiating down his legs;" and headaches. Dr. Komenda continued:

> [I]t is clearly obvious that [Lee] has had new symptoms after this motor vehicle accident related to the above findings. . . . in all medical probability, and actually without a doubt, he has suffered injury to his body due to the trauma of this accident.
> . . .
> These findings would coincide with the injury to his lumbar spine from the accident and account for the prolonged back pain and the numbness and pain radiating down his legs. The protruding disc and soft tissue swelling caused increased pressure on both the local nerves and lumbar nerve roots, which respectively caused the back pain and numbness in

---

[8] The Parties agreed to admit the affidavits of the doctors (Dr. Komenda and El-Rayes's counter-affidavit doctor, Dr. Bernie L. McCaskill, respectively) without live testimony.

–17–

the legs. These findings most certainly demonstrate objective findings that signify there was a substantial enough trauma in this accident to cause the noted injury to his back and spinal column. With his pelvis belted into the seat, his upper body was free to move abruptly and cause shearing forces in the low back, which caused the damage to the disc and other structures of the lumbar spine.[9]

In accordance with *Kelley & Witherspoon, LLP* and *Ten Hagen Excavating, Inc.*, the evidence in this case meets the requirements set forth in *Guevara*; the jury could causally connect the car accident to Lee's injuries without expert testimony. *See Kelley & Witherspoon, LLP*, 401 S.W.3d at 849–50; *Ten Hagen Excavating, Inc.*, 503 S.W.3d at 490. Considering the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support the trial court's verdict, we conclude that the jury could have found that the accident caused Lee's injuries. Furthermore, considering all the record evidence supporting and contradicting the trial court's judgment in a neutral light, we conclude that the jury could have found that the accident caused Lee's injuries. On this record, such a finding would not be so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. Therefore, we conclude that both legally and factually sufficient evidence supports the trial court's finding that the accident caused Lee's injuries.

---

[9] Dr. Komenda further wrote:

His lumbar disc protrusion with annular tearing, and other spinal injuries were certainly caused by and or made worse by the accident and of course caused symptoms as described in this report. The acute nature of his injuries from the accident correlates exactly to the abrupt onset of his symptoms indicating again that there has been new damage to his spinal column due to the trauma from this accident.

–18–

Because we conclude that the trial court (i) did not abuse its discretion in permitting testimony from Tamara Gaines, (ii) did not abuse its discretion in admitting the video into evidence, and (iii) had sufficient evidence to find that the accident caused Lee's injuries, we accordingly conclude that the trial court did not abuse its discretion in denying El-Rayes's motion for new trial.

### V. WHETHER THE TRIAL COURT ERRED IN DENYING EL-RAYES'S MOTION FOR JNOV

A trial court should grant a motion for JNOV when: (i) the evidence is conclusive and one party is entitled to recover as a matter of law, or (ii) a legal principle precludes recovery. *See Blackstone Med., Inc. v. Phoenix Surgicals*, *L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.); *Iroh v. Igwe*, 461 S.W.3d 253, 261 (Tex. App.—Dallas 2015, pet. denied); *see also* TEX. R. CIV. P. 301. A JNOV is proper when a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991); *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.,* 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied).

El-Rayes does not separately brief this issue and instead relies on the same legal sufficiency argument that there is no proper evidence establishing that he caused Lee's injuries. El-Rayes argues—without citation to authority or reference to the record—that Lee's injuries "are not the type that fall within the common knowledge or experience of a juror, such as a broken bone or laceration." However,

–19–

as the trial court found and we have confirmed, legally sufficient evidence supports the finding that El-Rayes's negligence caused Lee's injuries. Furthermore, we have detected no legal principle that precludes Lee's recovery from El-Rayes. *See Blackstone*, 470 S.W.3d at 645. Therefore, we conclude that the trial court did not abuse its discretion in denying El-Rayes's motion for JNOV. We overrule El-Rayes's sole issue.

## VI. CONCLUSION

Because we overrule El-Rayes's sole issue against him, we affirm the judgment of the trial court.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

190881f.p05

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MOHAMED AHMED EL-RAYES,
Appellant

No. 05-19-00881-CV     V.

JONG LEE, Appellee

On Appeal from the County Court at
Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-17-03631-
D.
Opinion delivered by Justice
Pedersen, III. Justices Whitehill and
Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JONG LEE recover his costs of this appeal from appellant MOHAMED AHMED EL-RAYES.

Judgment entered this 30th day of December 2020.